SAMUEL ANDREWS *vs.* J. P. MENDONCA and GASPAR
SYLVA.

APPEAL FROM DECISION OF McCULLY, J.

JULY TERM, 1885.

JUDD, C. J.; McCULLY and PRESTON, JJ.

Plaintiff, in January 1880, paid defendant Sylva $25, on account of the
purchase price of certain land, and Sylva agreed to execute a deed
as soon as prepared, plaintiff to pay balance of purchase money on
the execution of the deed, at the rate of five dollars per acre. The
boundaries and acreage of the land were not then, or at any time
subsequently, ascertained, and no steps were taken to agree on
the amount of the purchase money. During several years the
parties had conversations about the purchase, but nothing definite
was done, and meanwhile Sylva had improved the land and in-
creased its value, and had mortgaged a part of it to raise money
for improvements, believing that plaintiff had given up all inten-
tion of buying it.

In an action by plaintiff to compel specific performance of the con-
tract to sell the land; held that the right to demand specific per-
formance is not absolute, but rests in the sound discretion of the
Court; that plaintiff should not allow his rights to lie in abeyance
for so long a time; and that, on account of plaintiff's laches, the
bill must be dismissed.

Decree of the Vice-Chancellor affirmed.

OPINION OF THE COURT, BY PRESTON, J.

THIS is an appeal by the plaintiff from a decision of the Vice-
Chancellor, dismissing the plaintiff's bill, claiming specific per-
formance of an agreement for the sale of land in the district of
Waialua, island of Oahu.

The agreement is alleged to have been entered into in the
month of November, 1880, but from the evidence of Mendonca it
appears to have been made in January of that year.

The Vice-Chancellor dismissed the bill on the ground, princi-
pally, of laches on the part of the plaintiff in prosecuting his
claim.

At the hearing before us an affidavit by Mr. W. R. Castle was filed, explaining and contradicting his testimony given on the original hearing, on which occasion he denied having received any money from the plaintiff on account of the purchase money for the land in question, and said that he had no recollection of Sylva coming to his office about the land.

By the affidavit the witness states that from an examination of his books he finds that the plaintiff, on the third of February, 1882, paid to the deponent $200 to pay "cash down" on the purchase of said land, and that deponent then agreed to advance the remainder necessary to complete the purchase price, and that, at a time subsequent to said third day of February, 1882, and prior to the commencement of the suit, in the year 1882 or 1883, said Sylva came to the office of deponent, and deponent then requested him to execute a deed to said Andrews of the premises in question, and offered to pay him the purchase price thereof, and that said Sylva replied that he would do so, but that he was coming to town in a few weeks with his wife, and then they would attend to it.

The defendant denies these statements.

But taking the statements to be correct, do they make the case any better for the plaintiff? Was anything subsequently done by the plaintiff before the defendant made the improvements to the land, showing an intention by the plaintiff to exercise his right of purchase ?

On looking at the agreement, we find it stated the land in question contains ninety-five acres more or less, without further description, except that it is situated at Kawaihapai, in district of Waialua, and the price five dollars per acre.

This agreement was acknowledged by Mendonca before Mr. Castle, on the 16th day of June, 1882, and it appears to the Court that these words were then added, "land known as the Rice land, sold by Rice to Gulick." Underneath is written, seemingly as a memorandum of instructions, "Thinks there are two pieces."

In a conveyance from Gulick to Mendonca, which is put in evidence, there is a reference to a piece of land containing 45 acres, said to have been patented to W. H. Rice by Grant 458, also to another piece, containing 42 acres, part of land described in Grant

353, to Nahoa, part of the land (3 acres) having been sold to other persons.

Now, it does not appear that any steps were taken to ascertain the boundaries or acreage of the land, nor to agree on or ascertain the amount of the purchase money.

The matter was allowed to remain, and the statement of Mr. Castle to Sylva could only amount to this: "Andrews has instructed me to prepare a deed for him, will you sign it when ready?" and nothing further was done; in fact, it would appear to have been forgotten altogether by the plaintiff's then attorney.

Upon a consideration of the whole case, we are of the opinion that the decision of the Vice-Chancellor was correct, and accordingly the decision appealed from is affirmed with costs.

A decree will be signed on presentation.

*L. A. Thurston*, for plaintiff.

*A. S. Hartwell*, for defendant, Sylva.

Honolulu, September 19, 1885.

### DECISION OF McCULLY, J., APPEALED FROM.

This bill is brought to enforce the specific performance of the following agreement:

"Received from Samuel Andrews the sum of twenty-five dollars, on account of purchase money of a certain piece of land, situated at Kawaihapai, district of Waialua, Island of Oahu, containing ninety-five acres, more or less, and I agree to execute the necessary deeds of conveyance as soon as prepared, the (said) Samuel Andrews to pay the balance of purchase money (at the rate of five dollars per acre) on the execution of said deeds, land known as the Rice land, sold by Rice to Gulick.

J. P. MENDONCA.

Witness,

RICH'D F. BICKERTON."

This instrument is not dated.

It appears by the bill and answers that the two defendants were in a partnership in carrying on a ranch, which was dissolved November 30, 1880, at which time the defendant Mendonca made a conveyance of certain lands to the defendant Sylva, including the parcel referred to in the agreement in question, which lands he

had purchased of C. T. Gulick, by deed dated December 8, 1879. The date of the instrument is thus fixed between these two dates.

An instrument is exhibited, dated January 8, 1881, by which Gaspar Sylva covenants with the other defendant, Mendonca, to keep harmless and indemnify him from all claims which may arise out of the agreement to sell to Andrews.

The bill alleges repeated demands on Mendonca to specifically perform the contract; that before the sale of the land to Sylva, he had notice of this agreement, and that since the sale the plaintiff has frequently requested Sylva to receive the balance of the purchase money and to execute a deed. The specific averment in this particular being that the plaintiff had deposited the money for the purchase with his attorney in Honolulu, W. R. Castle, Esq., and had requested Sylva, and Sylva had agreed, to go to Mr. Castle's office, sign a deed and receive his money, but had neglected and refused to do so.

The answer of Sylva admits that he was informed by Mendonca, at the time of the sale of the land, of the agreement with Andrews, and that he made the covenant to keep him harmless. He denies the requests of plaintiff that he would receive the money and make the conveyance, and avers that the plaintiff at first informed him that Mr. Castle would advance the money, but subsequently that he declined, and that plaintiff could not raise the money, and he avers that he was ready and willing to carry out the agreement, until, believing that plaintiff had given up all intention of buying the land, he had fenced and improved it, and enhanced the value of it, and had included it in a mortgage by which money was raised for these and other improvements, etc.

The answer of defendant, Mendonca, admits the agreement, which he says was made about January, 1880, at the request of Andrews, after conferring with his partner. Admits the plaintiff's requests to him to convey as per agreement, but says that he requested him to wait until law suits pending between himself and partner should be settled. And that subsequent requests he referred to Sylva.

I have not made full abstracts of the bill and answers, leaving the incidents of the case to appear by a resume of the testimony applicable to the principal points involved.

56

Andrews, plaintiff, testifies that when the litigation arose between the defendants, this business was deferred at their request till the division of the property should be made. By the record in the case of *Mendonca vs. Sylva*, it appears that the litigation commenced in January, 1880, and closed in October. Andrews testifies that two weeks after the close of the litigation he met Sylva, who referred to the subject of the sale, and asked what he could do for him, and that it was left for Sylva, whenever he should next go into town, to go to the law office of W. R. Castle, where the deed might be executed and he would receive the money. By Andrews' testimony, nothing more was said about the business until the early part of 1882, when he met Sylva driving in a brake with his wife, when Sylva appears to have opened the conversation by asking, "What about that land we sold you—do you still wish it?" To which Andrews answered, "Certainly I do." That Sylva asked if he would not take instead an adjoining piece, and that Andrews said " No," giving reasons why he preferred the first piece, and that Sylva said, as he insisted on having the land, he would be going to town in a week or so, and would go to Mr. Castle's office, where Andrews said the money had been ready for him for some time, and make the deed. That the men next met January, 1883, at the house of Squires, in Honolulu, when Sylva asked Andrews to give up· the bargain—Andrews made no answer.

Sylva's testimony recognizes some interviews with Andrews. He makes out that Andrews was not at any time prepared to pay for the land, that he—Sylva—was quite desirous of realizing the money and was only waiting till Andrews could pay him.

Mr. Castle's testimony is to the effect of Andrews having placed the agreement in his custody, and asked him to advance the money. This Castle was willing to do. There was nothing moved actively forward by Andrews. Mr. Castle did not speak to Sylva's agent, Mr. S. M. Damon, whom he might see daily. At a late period, and when he heard that Sylva was proceeding to improve the premises, he spoke to Mr. Damon, who thought the matter had gone so long that Andrews had lost his right.

Squires gives testimony to show that both parties talked with him about the sale. Sylva requesting him to speak to Andrews,

and he telling Sylva that Andrews depended on Castle for the money, and there seemed a difficulty about getting it. Squires says that Andrews used to make loans of him; one application, he had an idea, was for the purchase of this property.

The testimony of Mr. Damon is that, by improvements on the land and in the neighborhood, the land has risen in value. It was safely worth now $1,200.

There is no precise rule for the determination of cases where specific performance of contracts to sell land is asked. The case of a defendant is better than that of a plaintiff, that is, it requires a much less strength of case on the part of a defendant to resist a bill than on the part of a plaintiff to enforce it. The right is not absolute, but in the sound discretion of the Court. Story's Eq. Jur., Section 742 and Section 769.

The impression made upon my mind by all the testimony, of which but a small part is quoted above, is that the plaintiff has committed laches which should bar his rights. He seems to have left everything for Sylva to do. At long intervals he meets him and asks him to go to his attorney in town and do the business. He had no money on deposit then, and I think Sylva was justified in his doubt if he should get it. The contract calls for payment of the balance at the rate of five dollars per acre, but there is no evidence that the exact area had been determined and that Mr. Castle had in his hands the data for drawing the deed and ascertaining the precise sum due on the land. When the parties met in town at Squires' house, and the business might have been closed by a tender of the money and a deed, nothing seems to have been done. The conduct of Andrews was not that of one who is ready and desirous to carry out the contract. It does not seem to me to be equitable that the land should for so long a time be bound by a contract of sale, which might have been completed promptly after it was made. Several years pass by—the land more than doubles in value—the owner raises money for improvements, in part by a mortgage of this piece. It seems to me to be a sound and wholesome rule to say that a person in the plaintiff's position should not allow his rights to lie in abeyance for such a length of time. He stands ready to play fast and loose. If the

land shall rise in value, he will claim it. If it falls, he will let it alone. He is not bound to purchase.

. The plaintiff's bill is dismissed.

Honolulu, June 20, 1885.