ROBERT A. CLARKIN, Plaintiff-Appellant, Cross-Appellee, *v.* AUGUST REIMANN, JR., Defendant-Appellee, Cross-Appellant

NO. 7323

(CIVIL NO. 43444)

AND

ROBERT A. CLARKIN, Plaintiff-Appellant, Cross-Appellee, *v.* AUGUST REIMANN, JR., Defendant-Appellee, Cross-Appellant, and HAWAIIAN TRUST COMPANY, LIMITED, a Hawaii corporation, Trustee under that certain unrecorded Robert A. Clarkin Revocable Living Trust Agreement, dated September 25, 1979, as amended, Party Appellant

NO. 7324

(CIVIL NO. 44167)

DECEMBER 23, 1981

HAYASHI, C.J., BURNS, J., AND CIRCUIT JUDGE KATO IN PLACE OF ASSOCIATE JUDGE PADGETT, DISQUALIFIED

OPINION OF THE COURT BY BURNS, J.

These two cases which involve the same parties and adjoining parcels of land were consolidated for trial. In each case the plaintiff lost on his complaint and the defendant lost on his counterclaim. Each party appeals the decisions against him.

Plaintiff Clarkin contends that because of the substantial risk of prejudicial confusion, the lower court abused its discretion by consolidating the two cases for trial, pursuant to Hawaii Rules of Civil Procedure (HRCP), Rule 42(a). Especially, but not solely, because the two cases were tried before a judge and not a jury, we disagree.

In Civil No. 44167, the primary issue is whether the lower court manifestly abused its discretion when it denied specific performance of an agreement to extend for an additional 33-year period a lease which had 66 more years to go and to fix for an additional 24-year period the rent which was already fixed for 26 years. We answer no and affirm.

In Civil No. 43444, the primary issue is whether a letter agreement to lease undeveloped land is sufficiently complete and certain as to its essential terms so that it is a valid and enforceable contract. We answer no and affirm.

In both cases the second issue is whether the lower court clearly erred in finding that Defendant Reimann did not prove his counterclaims for abuse of process and "overreaching."[1] We answer no and

---

[1] We do not reach the issue whether "overreaching" is a cause of action separate and distinct from the cause of action of fraud because according to Reimann, as used by him in this case, "[o]verreaching is synonymous with fraud." Cross-Appellant's opening briefs at 31.

affirm.

We find all other issues raised to be without merit and we summarily reject them.

## CIVIL NO. 44167

By lease dated November 3, 1959, Reimann leased to Napili Hotel, Inc., Lot 13-A-4, containing 6.33 acres in Napili, Maui, for 75 years from January 1, 1960. The rental for the first 35 years was fixed and a method was specified to determine the rental for the subsequent four successive ten-year periods.[2]

By sublease and assignment dated September 28, 1964, Napili Hotel, Inc., subleased Lot 13-A-4 to Harry K. Meyer, Robert A. Clarkin, and Philip Ching for a term ending December 31, 1994. The agreement required the sublessees to "place upon the premises improvements of a value of not less than $40,000" by September 28, 1966, and "not less than $275,000 in the aggregate" by September 28, 1970, and assigned to them sublessor's interest in the November 3, 1959 lease[3] from and after January 1, 1995.

By document dated June 7, 1965, Mrs. Reimann released her dower interest for the term of the lease and the Reimanns agreed to subordinate their fee simple title to an improvement mortgage and to condominium-apartment purchase money mortgages.

By assignment dated November 2, 1967, Meyer and Ching conveyed their interests in the sublease and assignment to Clarkin.

On April 9, 1968, Clarkin personally gave to the Reimanns a letter wherein he, as lessee, offered an extension of the lease's term

---

[2] Plaintiff's Exhibit 3 reads as follows:

Net annual rental as [sic] shall be the sum determined by multiplying the current interest rate (which is defined as the rate of interest then charged by banks making conventional bank mortgage loans to individuals) by the fair market value of the land, exclusive of the building thereon;. . . If the parties do not agree as to what is the then current bank loan interest rate, the interest rate charged by the Bank of Hawaii or its successor will be determinative, and if the parties hereto do not agree as to the then market value of the land, exclusive of buildings thereon, said fair market value shall be determined by three impartial real estate appraisers,. . . .

[3] The document erroneously refers to a November 3, 1956, lease.

from December 31, 2034, to December 31, 2067, and a fixing of the rental from January 1, 1995, to December 31, 2018.[4] The last paragraph of the letter stated as follows:

If the above is in accordance with your understanding of our agreement, will you please sign below in the place indicated, and I will have the necessary documents drawn for signature.

The Reimanns signed their acceptance of Clarkin's offer on the same day. The letter agreement was not in recordable form.

By assignment dated January 31, 1969, Napili Hotel, Inc., conveyed its lessees' interest in the November 3, 1959, lease to Kepokai Aluli and Yoshiho Ogami.

On November 19, 1970, Clarkin conveyed to Shelter Corporation the right "to develop residential condominium units and other improvements" on the property.

Sometime after September 28, 1970, Aluli and Ogami filed suit to cancel the sublease for Clarkin's failure to place upon the premise improvements of a value of not less than $275,000 in the aggregate by September 28, 1970. The case settled and on January 11, 1971, Aluli, Ogami, and Clarkin amended the sublease by adding two paragraphs, one entitled "Consent to Mortgage" and the other "Protection of Mortgagee."

On or about January 21, 1971, Clarkin's attorney prepared a recordable document extending the lease, and Clarkin took it to the Reimanns. Mr. Reimann testified that "I told him to see my attorney" and that Clarkin did not leave any papers with him. Clarkin and his notary public each testified that Clarkin gave the document to the Reimanns, that Mr. Reimann told him that he would give the document to his lawyer "and that either his lawyer or he would contact" Clarkin. Neither Clarkin nor the Reimanns did anything further concerning the document.

On or about March 10, 1971, Clarkin delivered to the Reimanns' attorney a proposed amendment to the Reimann-Aluli-Ogami lease and a proposed horizontal property regime declaration. Thereafter,

---

[4] The letter fixed the rent as follows: "From January 1, 1995 to December 31, 2008, at the rate of 6% of $2.00 per square foot, or $33,088 per year; From January 1, 2009 to December 31, 2018, at the rate of 6% of $2.50 per square foot, or $41,360 per year;. . ."

the Reimanns' attorney and Shelter Corporation's attorneys negotiated.[5]

Between November 30, 1971, and February 17, 1972, the Reimanns,[6] the Alulis, the Ogamis, the Clarkins,[7] and the Shelter Corporation executed a declaration submitting Lot 13-A-4 to a Horizontal Property Regime for a term equal to the remainder of the 75-year term of the November 3, 1959, lease. The declaration referred to each of the transactions hereinbefore mentioned but it did not mention the April 9, 1968, letter agreement or Clarkin's entitlement to a 24-year extension of the lease.

Sometime in 1972 and 1973, a 152-unit residential condominium was constructed and units were sold together with undivided interests in a 55-year sublease of the underlying real estate.

Mrs. Reimann died in February 1973 at the age of 76.

On or about October 24, 1974, Clarkin's attorney prepared a new recordable document extending the lease and sent it to Reimann's attorney for execution by Reimann. Reimann's attorney responded that she had advised her client that the letter agreement was unenforceable.

On January 30, 1975, Clarkin sued Reimann for specific performance of the April 9, 1968, letter agreement. He did not pray for any alternative relief. Reimann pled the affirmative defenses of "fraud and overreaching at its inception," statute of limitations, want of consideration, laches, waiver by course of conduct and estoppel. Reimann also counterclaimed for compensatory and punitive damages for "abuse of process" and for "overreaching."[8] During trial Reimann amended his answer to add the affirmative defense of failure to perform conditions subsequent within a reasonable time.

---

[5] A partner of the law firm which represented both Shelter Corporation and Clarkin prior to March 1, 1971, and after October 23, 1974, testified that the law firm represented only Shelter, and not Clarkin, between those two dates. Thus, it is contended that when Clarkin made the March 10, 1971, delivery, he did so as agent for his former attorneys who were then representing Shelter Corporation and not him. In its dealings with Reimann's attorney, the law firm did not inform her who it was or was not representing at any particular time and she did not ask.

[6] [7] The Clarkins signed on November 30, 1971, and the Reimanns signed on December 16, 1971.

[8] See n.1, supra, at 1.

When Clarkin deposed Reimann in April 1975, Reimann was 85 years of age.

After a jury-waived trial in March 1976, the lower court denied specific performance based on its findings[9] that the contract "expired within its own limitations because it was not completed within a reasonable time" and that "Mr. Clarkin and Mr. Reimann intentionally abandoned this contract." The trial court denied Reimann's counterclaims based on its finding that Reimann did not prove either of them.

Clarkin appeals,[10] contending that the lower court erred when it ruled that the contract expired according to its terms and when it ruled that Clarkin and Reimann abandoned the contract.

Reimann cross-appeals, contending that the lower court erred in denying his counterclaims and in refusing to admit various exhibits.

Clarkin's appeal is focused exclusively on the lower court's findings and conclusions that the contract expired and was abandoned. However, where the facts support the conclusion reached, the trial court's judgment will be affirmed even though the trial court errs in its reasoning. *Okuna v. Nakahuna,* 60 Haw. 650, 594 P.2d 128 (1979).

The awarding of specific performance is a matter addressed to the sound discretion of the trial court, *Jenkins v. Wise,* 58 Haw. 592, 574 P.2d 1337 (1978); *Hurst v. Kukahi,* 25 Haw. 194 (1919); *Peterson v. Lazarus,* 7 Haw. 129 (1887); *Andrews v. Mendonca,* 5 Haw. 446 (1885); and its decision will be set aside only where there has been a manifest abuse thereof.[11]

---

[9] Regrettably, the parties stipulated that they would accept the lower court's oral decision as its findings of fact and conclusions of law.

[10] On September 25, 1979, Clarkin assigned his interest in the September 28, 1964, sublease and assignment to Hawaiian Trust Company, Limited, as trustee under a revocable living trust. Thereafter, we permitted Hawaiian Trust to enter the case as an additional party appellant.

[11] *Jenkins v. Wise,* 58 Haw. 592, 574 P.2d 1337 (1978), says that the trial court's exercise of discretion will be set aside if "manifestly against the clear weight of the evidence." *Id.* at 598, citing *First Hawaiian Bank v. Smith,* 52 Haw. 591, 483 P.2d 185 (1971). The *First Hawaiian Bank* case says that the trial court's exercise of discretion will be set aside "only when the reviewing court is driven 'irrefragably to the conclusion that all objective appraisals of the evidence would result in a different finding.' " *Id.* at 593, citing *Low v. Honolulu Rapid Transit Co.,* 50 Haw. 582, 586, 445 P.2d 372,

Thus, we need not determine whether the lower court erred in deciding that the contract expired or was abandoned. The issue is whether the lower court manifestly abused its discretion in denying specific performance. That issue involves a question whether the trial court's decision "clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." *State v. Sacoco*, 45 Haw. 288, 367 P.2d 11 (1961).[12] *Hawaii Automotive Retail Gasoline Dealers Association, Inc. v. Brodie*, 2 Haw. App. 99, 626 P.2d 1173 (1981); *Title Guaranty Escrow Services, Inc., v. Powley*, 2 Haw. App. 265, 630 P.2d 642 (1981).

Specific performance may be refused where the contract is not fair and just in all its terms, where it is inequitable, oppressive, or unconscionable or where the circumstances attending it are not such as commend it favorably to the court. 71 AM. JUR.2d, *Specific Performance* § 5.

Here, in April of 1968, a 78-year-old man and his 71-year-old wife contracted, as lessors, to change a 66-year land lease with 26 years fixed rental into a 99-year land lease with 50 years fixed rental. The rental for the first 14 years of the additional 24-year fixed rental

---

376 (1968). The *Low* case involved a Rule 52(a), HRCP, question about whether a finding of fact was clearly erroneous; it did not involve an abuse of discretion issue.

There are different kinds of review:

1. Appellate review of a trial court's findings of fact which is conducted under HRCP, Rule 52(a)'s clearly erroneous standard. *Sandstrom v. Larsen*, 59 Haw. 491, 583 P.2d 971 (1978).

2. Appellate review of a trial court's conclusions of law which is conducted on a *de novo* basis. 9 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: Civil § 2588 (1971).

3. Appellate review of a trial court's exercise of discretion which is conducted under the "manifest abuse" standard. *State v. Sacoco*, 45 Haw. 288, 367 P.2d 11 (1961).

4. Court review of the decision of an administrative agency which is conducted under HRS § 91-14(g).

We caution against confusing them.

[12] Query whether the quantity of a court's discretion differs depending on the issue involved. When deciding domestic relations issues, the trial judge has "wide discretion." *Ahlo v. Ahlo*, 1 Haw. App. 324, 619 P.2d 112 (1980). When deciding whether to grant or deny equitable relief, it has "broad discretion." *Wiginton v. Pacific Credit Corporation*, 2 Haw. App. 435, 634 P.2d 111 (1981). Are there situations when the court's discretion is more or less than wide or broad? Do not the "bounds" differ depending on the issue involved?

period was set at 6% of $2.00 per square foot and for the final 10 years it was set at 6% of $2.50 per square foot.

Further, although the lessee promised to have the necessary documents drawn for signature, he did not do so until January 1971. Thereafter, he did not question why the lessors had not signed nor did he further pursue the matter until October 1974. By that time, one of the two lessors had died and the other was over 84 years of age and, with the cooperation of the lessors, a 152-unit condominium-apartment building had been constructed on the land covered by the lease and the units had been sold together with 55-year leases of the underlying land.

From 1968 until 1974, the conduct of Clarkin "was not that of one who is ready and desirous to carry out the contract." *Andrews v. Mendonca,* 5 Haw. 446 (1885), *supra,* at 451.

In such circumstances, we conclude that the lower court did not manifestly abuse its discretion when it denied the equitable relief of specific performance.

Affirmed.

## CIVIL NO. 43444

On June 7, 1968, Clarkin personally gave to the Reimanns a letter in which he offered to lease Lot 13-A-5 containing 2.67 acres (adjoining Lot 13-A-4) "in the event that you do not execute a lease for said property to Rand Hawaii, Ltd. or Russel [sic] M. Stewart on or before August 15, 1968. . . ." The length of the lease was to be 99 years with fixed rental for the first 50 years "and during the remainder of the period the rent will be renegotiated each 10 years, but in no event will it be less than $17,000 per year." However, the payment of rent, of which $10,000 was to be prepaid upon execution of the lease, was not to commence until the property was "zoned in the same manner as the Napili Hotel property, or higher density." The letter further specified that:

> The lease will contain such other provisions of the lease for Napili Hotel as may be appropriate.
>
> If the above is in accordance with your understanding of our agreement, will you please sign below in the space indicated, and I will have the necessary documents drawn for signature.

The Reimanns signed their acceptance on the same day.

By letter dated August 21, 1968, Clarkin's attorney wrote to Reimann's attorney advising him that since "the Reimanns did not execute a lease with either Rand Hawaii, Ltd. or Russell M. Stewart on or about August 15, it seems that it is now appropriate to draw a lease between the Reimanns and Bob Clarkin."

On October 22, 1968, Clarkin's attorney sent Reimann's attorney a second letter stating, *inter alia:*

As discussed with you a few weeks ago, it is my understanding that Bob Clarkin has an agreement with Mr. and Mrs. Reimann to lease certain property they own at Napili, Maui. This agreement to lease was subject to the condition that Dick Rand and his group would not exercise any option they may have had to lease the property. I am not certain what the status of Dick Rand's proposed option is and I would appreciate being advised on this.

The Reimanns' attorney responded by letter dated November 1, 1968:

This will advise you that the Rand group have timely exercised their option and negotiations are now underway between the principals to resolve the details of the long term lease.

In the light of the Rand exercise, it appears that your client has no interest in the Reimann property.

Neither Clarkin nor his attorney pursued the matter any further until this suit was filed six years later.

On December 3, 1968, the Reimanns leased Lot 13-A-4 to Rand Properties, Ltd.,[13] for a term ending November 30, 2046.

Clarkin testified that it was not until the fall of 1973 that he became aware of the fact that Lot 13-A-5 had been leased to someone other than Rand Hawaii, Ltd., or Russell M. Stewart. On November 1, 1974, Clarkin sued Reimann for damages[14] for breach of contract. He did not pray for any alternative relief. On November 4, 1974, Clarkin's attorney advised Reimann's attorney of Clarkin's willingness to drop this suit concerning Lot 13-A-5 if Mr. Reimann

---

[13] The record does not indicate any connection or relationship between Rand Properties, Ltd., and Rand Hawaii, Ltd., or Russell M. Stewart.

[14] At trial Clarkin prayed for damages of $55,484.

would honor the April 9, 1968, letter agreement to extend the lease of Lot 13-A-4.[15]

Reimann pled affirmative defenses and counterclaims substantially the same as he pled in Civil 44167.

At the end of the trial, the lower court concluded that both sides must have interpreted the word "executed" to mean "not necessarily signed but agreed upon"; that the agreement "is without consideration; that it is unconscionable and overreaching; and that "I don't believe the Court should let an agreement like this pass without advice of counsel."

The court awarded Reimann attorney's fees under HRS § 607-14 of $2,012.10.

Clarkin appeals, contending that the lower court erred when it ruled that the letter agreement was without consideration; when it ruled that it was overreaching and unconscionable; and when it interpreted the word "execute" in the light of events which occurred after the agreement.

Reimann cross-appeals, contending that the lower court erred in denying his counterclaims.

The construction and the legal effect to be given a contract is a question of law. *Reed & Martin, Inc. v. The City and County of Honolulu*, 50 Haw. 347, 440 P.2d 526 (1968).

An appellate court is not bound by a trial court's construction of a contract based solely upon the terms of a written instrument without the aid of extrinsic evidence. *Southern California First National Bank v. Olson*, 116 Cal. Rptr. 4, 41 Cal. App. 3d 234 (1974). In such circumstances, the appellate court must make its own independent determination. *Yamanishi v. Bleily & Collishaw, Inc.*, 105 Cal. Rptr. 580, 29 Cal. App.3d 457 (1972).

*American Security Bank v. Read Realty, Inc.*, 1 Haw. App. 161, 616 P.2d 237 (1980).

Our independent examination of the contract leads us to the conclusion that the June 7, 1968, letter agreement is not a valid and enforceable contract because it is not complete and certain as to its essential terms. *Francone v. McClay*, 41 Haw. 72 (1955); *Sing Chong*

---

[15] This letter is Reimann's evidence in support of his counterclaims for abuse of process.

*Company, Limited, v. Kaneshiro,* 1 Haw. App. 236, 617 P.2d 578 (1980).

The letter agreement does not tell us what the rent is for the last 49 years nor does it specify the method of ascertaining it. Clarkin contends that the method of ascertaining it is contained in the Reimann-Napili Hotel, Inc., lease of Lot 13-A-4.[16] He contends that a fair reading of the June 7, 1968, letter agreement's language that "[t]he lease will contain such other provisions of the lease for Napili Hotel as may be appropriate" is that the lease will contain all other provisions of the Napili Hotel lease unless they are inappropriate.

The best way to test the validity of Clarkin's contention is to determine whether each side could have forced the other to be bound by all non-inconsistent provisions of the Napili Hotel lease notwithstanding the other's objection. In our view, the specification that "[t]he lease will contain such other provisions of the lease for Napili Hotel as may be appropriate" is not a legally enforceable requirement that all non-inconsistent provisions shall be applied. On the contrary, it indicates that the parties have left terms undecided for future negotiation and decision.

Moreover, the letter agreement specifies that for the final 49 years of the lease term, the "rent will be renegotiated each 10 years." The use of the word "renegotiated" contradicts an intent to use the same method for determining rent as is contained in the Reimann-Napili Hotel, Inc., lease.

Affirmed.

*Edward A. Jaffe (Philip J. Leas* and *Edward R. Brooks* with him on the briefs; *Cades, Schutte, Fleming & Wright)* for plaintiff-appellant, cross-appellee.

*Helen R. Ryan (Ryan & Ryan)* for defendant-appellee, cross-appellant.

---

[16] *See* n.2, *supra,* at 2.