**Electronically Filed
Intermediate Court of Appeals
CAAP-20-0000122
29-OCT-2021
08:29 AM
Dkt. 126 MO**

NO. CAAP-20-0000122

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

LAWRENCE P. PECK; ROBBYN L. PECK; and PECK INC.,
a Hawaii Corporation, Plaintiffs-Appellees, v.
LYNN LINDER NAKKIM, Defendant-Appellant, and CONTINENTAL
PACIFIC, LLC, a Delaware Limited liability Company,
Defendant-Appellee, and JOHN DOES 1-10; JOHN DOE
PARTNERSHIPS 1-10; JOHN DOE CORPORATIONS 1-10;
JOHN DOE GOVERNMENTAL ENTITIES 1-10, Defendants

AND

LAWRENCE P. PECK; ROBBYN L. PECK; and PECK INC.,
a Hawaii Corporation, Plaintiffs-Appellees, v.
LYNN LINDER BOERNER NAKKIM, Defendant-Appellant, and LYNN
LINDER NAKKIM, as Trustee under the Lynn Linder Nakkim Trust
dated October 3, 2011, Defendant-Appellee, and
PAUL SULLA, Intervenor-Appellee, and JOHN DOES 1-10; JOHN DOE
PARTNERSHIPS 1-10; JOHN DOE CORPORATIONS 1-10, Defendants

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CIVIL NO. 04-1-374 AND 14-1-180)

MEMORANDUM OPINION
(By: Ginoza, Chief Judge, Leonard and Hiraoka, JJ.)

## I. Introduction

This case arises from a contract dispute between
Defendant-Appellant Lynn Linder Nakkim (**Nakkim**) and Plaintiffs-
Appellees Lawrence P. Peck (**Mr. Peck**), Robbyn L. Peck (**Mrs. Peck;
together, the Pecks**), and Peck, Inc. (collectively, **Plaintiffs**).
In 2003, Nakkim and the Plaintiffs executed two documents: (1) an
Agreement of Sale for a 50-acre parcel of land (**Mt. View**

**Property**) to be sold by Nakkim to the Pecks; and (2) a Construction Contract between Nakkim and Peck, Inc. for the construction of a residence for Nakkim on a separate parcel of land (**Nakkim Residence**). The Pecks agreed to purchase the Mt. View Property from Nakkim for $180,000 to be paid in two ways: (1) the Pecks agreed to pay $87,412.42 through monthly payments of $1,054.42 beginning December 1, 2003; and (2) the remaining balance ($92,587.58) would be paid by providing credit to Nakkim for the first payments due to Peck, Inc. under the Construction Contract.

Nakkim appeals from the following: (1) "Order Denying [Nakkim's] Motion to Prohibit Plaintiffs From Performing Without a Valid State Contractor's License" (**Order Denying Motion To Prohibit**) filed November 29, 2019; (2) "Order Granting Motion to Release Deeds for Filing" (**Order To Release Deeds**) filed November 29, 2019; and (3) "Order Denying [Nakkim's] Non-Hearing Motion to Reconsider, Alter or Amend '[Order To Release Deeds]'" (**Order Denying Reconsideration Re: Deeds**) filed February 3, 2020, all entered by the Circuit Court of the Third Circuit (**Circuit Court**).[1]

Nakkim contends the Circuit Court erred in (1) denying her motion to prohibit Plaintiffs from performing without a valid contractor's license; and (2) allowing the premature release of the deeds to the Mt. View Property to the Pecks and allowing the transfer of title which is the subject of the unsatisfied contract between the parties.

We have appellate jurisdiction to address Nakkim's appeal and we affirm the three orders challenged in this appeal.

## II. Background

This is the second appeal arising from two consolidated lawsuits between these parties. Plaintiffs initially filed a "Complaint for Specific Performance, Injunctive Relief and

---

[1]  The Honorable Greg K. Nakamura entered the Order Denying Motion To Prohibit and the Order To Release Deeds. The Honorable Darien W.L. Ching Nagata entered the Order Denying Reconsideration Re: Deeds.

Damages" against, *inter alia*, Nakkim, on November 12, 2004, in Civil No. 04-1-374. On October 2, 2008, after a jury-waived trial, the Circuit Court entered judgment against Nakkim and in favor of the Plaintiffs. Nakkim appealed, challenging several of the Circuit Court's findings of fact (**FOFs**) and conclusions of law (**COLs**) in Peck v. Nakkim, No. 29480, 2013 WL 6762359 (Haw. App. Dec. 20, 2013) (mem)(**First Appeal**).

In the First Appeal, we vacated the Circuit Court's FOFs and COLs to the extent that the Circuit Court found that the Agreement of Sale and the Construction Contract were intended to form a single contract but ordered specific performance on only one part of the agreement and reformed the contract by substituting monetary compensation for the construction of the Nakkim Residence. Id. at *10-11. We also held that the Circuit Court erred by failing to enter any FOFs or COLs as to whether Nakkim was threatening to or in actual breach of either the Agreement of Sale or the Construction Contract in rendering its judgment of specific performance against Nakkim and in favor of the Plaintiffs. Id. at *9. We remanded the case to the Circuit Court for further proceedings.

On April 29, 2014, in Civil No. 14-1-180, the Plaintiffs filed another Complaint against, *inter alia*, Nakkim, claiming among other things that Nakkim delayed the commencement of construction for the Nakkim Residence by failing to obtain the necessary approvals and breached the Agreement of Sale and Construction Contract. The Pecks also claim that during pendency of the First Appeal, Nakkim transferred the deeds to the Mt. View Property and the land for the construction of the Nakkim Residence to Nakkim as the sole trustee under the Lynn Linder Nakkim Trust. On March 4, 2015, the Circuit Court consolidated Civil Nos. 14-1-180 and 04-1-374.

On June 6, 2016, the Circuit Court entered Amended Findings of Fact, Conclusions of Law (**Amended FOFs/COLs**) pursuant to the holding in Peck, 2013 WL 6762359, which Nakkim does not

challenge.[2]  In the Amended FOFs/COLs, the Circuit Court found in relevant part:

> 13.  [T]he Court finds that the delay in the start of construction on Defendant's Waiki'i Ranch property was not the fault of Plaintiffs, but primarily attributable to Defendant's failure to get approvals from the Design Committee in a timely fashion.
>
> . . . .
>
> 16.  [The Pecks] have expended in excess of $120,000.00 in improvements upon the Mt. View land purchased by them to construct a dwelling thereon and taken other actions, in reliance on the Agreement of Sale.
>
> 17.  The Court determines that [the Pecks] are entitled to specific performance of the Agreement of Sale. . . .
>
> 18.  After consideration of the Memorandum Opinion entered in this case by the Intermediate Court of Appeals of the State of Hawaii (the "ICA") the Court modifies its' [sic] prior Decision and determines that both the Agreement of Sale and the Construction Contract that are [sic] specifically enforceable as a single agreement.
>
> . . . .
>
> 21.  Based on the Findings of Fact, the court makes the mixed Finding of Fact and Conclusion of Law, that Defendant NAKKIM threatened to breach and/or breached the agreement encompassed by the Agreement of Sale and the Construction Contract and that Nakkim unequivocally repudiated the agreement.
>
> 22.  Finally, in Paragraph 18 of the original Findings of Fact, the finding was made that the Construction Contract was "too imprecise to specifically enforce".  The ICA vacated that finding and made no comment on the effect of the finding that the Construction Contract was "too imprecise to specifically enforce." One possible inference is that the ICA does not agree with the finding. Accordingly, the court make [sic] no finding on this point and specifically enforces the Construction Contract component of the agreement as allowed by law.

After giving credit to the Pecks for monthly payments, adding insurance premiums, real property taxes, and interest payable at the judgment rate of interest of ten percent (10%) a year on the principal amount due, the Circuit Court calculated the Pecks' financial obligation to Nakkim under the Agreement of

---

[2]  "Findings of fact ... that are not challenged on appeal are binding on the appellate court." Okada Trucking Co. v. Bd. of Water Supply, 97 Hawai'i 450, 458, 40 P.3d 73, 81 (2002).

Sale as $133,653 as of August 31, 2017 plus $20.75 for each day after August 31, 2017. On September 27, 2017, the Circuit Court ordered that the Pecks deposit the full amount due on the Agreement of Sale with the exception of the Construction Contract component (the first $92,587.58 credit for Peck, Inc.) within sixty days from the date of the order. On or about November 17, 2017, the Pecks deposited $135,000.

On January 8, 2018, the Circuit Court entered its "Order Granting Motion to Appoint Clerk to Sign Deed and Related Closing Documents on Behalf of [Nakkim] Individually and as Trustee or in the Alternative for an Order/Judgment Divesting Title in Lieu of Directing a Conveyance," which directed Nakkim to sign and deliver the deed to the Mt. View Property to be held by the Circuit Court.

On October 11, 2019, the Pecks filed a "Motion to Release Deeds for Filing" (**Motion To Release Deeds**) asking the Circuit Court to release the deeds to the Mt. View Property so that the Pecks could file and record title to the property in their name. Also on October 11, 2019, Nakkim filed a "Motion to Prohibit Plaintiffs From Performing Without a Valid State Contractor's License" (**Motion To Prohibit**) arguing that Mr. Peck no longer held a valid State contractor's license and thus could not perform under the Construction Contract.

On November 29, 2019, the Circuit Court entered its Order To Release Deeds, which states, in relevant part:

> 1. The Motion To Release Deeds for filing is hereby GRANTED subject to the filing of a lien on the Mt. View portion of the property regarding [the Pecks'] obligations to perform under the Construction Contract portion of that integrated Contract consisting of the Agreement of Sale and the Construction Contract both dated November 29, 2003. The Deeds held by the Court shall be released to the [Pecks] or their counsel of record upon the filing of this Order and the lien.
>
> 2. A copy of this Order shall be filed in the Bureau of Conveyances along with the Deeds released to [the Pecks] and the lien herein.
>
> 3. The monies deposited by [the Pecks] on or about November 17, 2017 ($135,000) and the interest earned thereon shall be released to [Nakkim] or her counsel of record upon presentation of this Order to the Clerk.

5

Also on November 29, 2019, the Circuit Court entered its Order Denying Motion to Prohibit. On December 1, 2019, Nakkim filed a "Notice of Pendency of Action and Lien Re: TMK (3) 1-8-005:113."

### III. Discussion

**A. Appellate Jurisdiction Under the Forgay Doctrine**

As a preliminary matter, we determine that we have appellate jurisdiction over Nakkim's appeal. Hawaii Revised Statutes (**HRS**) § 641-1(a) (2016) authorizes appeals to the ICA from "final judgments, orders, or decrees[.]" Appeals under HRS § 641-1 "shall be taken in the manner . . . provided by the rules of court." HRS § 641-1(c) (2016). Hawai'i Rules of Civil Procedure (**HRCP**) Rule 58 requires that "[e]very judgment shall be set forth on a separate document." Typically, an appeal may be taken only after an appealable judgment has been entered resolving claims in favor of and against the parties pursuant to HRCP Rule 58 or 54(b). Jenkins v. Cades Schutte Fleming & Wright, 76 Hawai'i 115, 119, 869 P.2d 1334, 1338 (1994).

An exception to the general rule requiring a final judgment is the Forgay doctrine, Forgay v. Conrad, 47 U.S. 201 (1848), which "allows an appellant to immediately appeal a judgment for execution upon property, even if all claims of the parties have not been finally resolved." Ciesla v. Reddish, 78 Hawai'i 18, 20, 889 P.2d 702, 704 (1995). Under the Forgay doctrine, Hawai'i appellate courts "have jurisdiction to consider appeals from judgments which [1] require immediate execution of a command that property be delivered to the appellant's adversary, and [2] the losing party would be subjected to irreparable injury if appellate review had to wait the final outcome of the litigation." Id. (citations, internal quotation marks omitted; some brackets added and some omitted); see also Lambert v. Teisina, 131 Hawai'i 457, 461-62, 319 P.3d 376, 380-81 (2014)(noting that "[f]oreclosure decrees, writs of possession, and orders for the sale of specific property are examples of orders and decrees that [the Hawai'i Supreme Court] has held to be appealable under the Forgay doctrine[,]" and holding there was

6

appellate jurisdiction to review an order confirming a partition sale and directing distribution of the proceeds).

In this case, although there is a lien on the Mt. View Property and there was a release of $135,000 in favor of Nakkim, the Nakkim Residence has not yet been constructed and the Circuit Court's Order To Release Deeds required that deeds to the Mt. View Property be delivered to Nakkim's adversary, the Pecks. This allowed the Pecks to record title to the Mt. View Property in their name and affected Nakkim's property rights.

Accordingly, we have appellate jurisdiction to review the Circuit Court's Order To Release Deeds regarding the Mt. View Property, and the Order Denying Reconsideration Re: Deeds. Further, we have appellate jurisdiction to review the Circuit Court's Order Denying Motion To Prohibit because Nakkim argues that Mr. Peck cannot perform his obligation to build the Nakkim Residence without his contractor's license. As we stated in the First Appeal, the Agreement of Sale and the Construction Contract were intended by the parties to be an expression of a single agreement between Plaintiffs and Nakkim, and in that agreement, Nakkim is to convey the Mt. View Property to the Pecks in exchange for the construction of the Nakkim Residence by the Plaintiffs. 2013 WL 6762359, at *11. The Circuit Court heard arguments regarding the Motion To Prohibit and the Motion To Release Deeds during the same hearing and filed the Order Denying Motion To Prohibit and the Order To Release Deeds on the same day. The Circuit Court's Order To Release Deeds is implicitly dependent on a determination that the Pecks could fulfill their obligation to build the Nakkim Residence without Mr. Peck's contractor's license.

Therefore, we review Nakkim's points of error raised in this interlocutory appeal.

B.  **The Circuit Court Did Not Err In Denying Nakkim's Motion To Prohibit**

Nakkim contends the Circuit Court erred in denying her Motion To Prohibit because Mr. Peck is no longer a licensed

7

contractor and is thus unable to perform under the Construction Contract without her approval.  "As a general rule, the construction and legal effect to be given a contract is a question of law freely reviewable by an appellate court."  <u>Brown v. KFC Nat'l Mgmt. Co.</u>, 82 Hawai'i 226, 239, 921 P.2d 146, 159 (1996) (citations omitted).

Nakkim argues that under the Agreement of Sale, the Pecks are prohibited from transferring their rights and duties and cannot transfer the duty to perform the Construction Contract to another person without Nakkim's consent.[3]  Nakkim also argues that the Construction Contract is a "personal services contract" involving the personal skill and relationship of confidence in Mr. Peck and therefore, the Construction Contract is not assignable without her express consent.  We conclude the Circuit Court did not err in its Order Denying Motion To Prohibit.

First, notwithstanding Nakkim's contention that Mr. Peck is the contractor under the Construction Contract and/or the Agreement of Sale, the Construction Contract is between Nakkim and Peck, Inc. and specifically refers to Peck, Inc. as the "Contractor".  Furthermore, the Agreement of Sale contains the following relevant definitions:

> (B) "SELLER" LYNN NAKKIM, husband and wife [sic], will be called the "SELLER."
>
> (C) "BUYER(S)" LAWRENCE P. PECK & ROBBYN L. PECK, will be called the "BUYER".
>
> . . . .
>
> (F) "CONSTRUCTION CONTRACT" The Contract between the SELLER and BUYER for the construction of a HOME on SELLER'S property.  Said CONSTRUCTION CONTRACT CONTRACT [sic] shall be balance of the payment made for PROPERTY.

The Agreement of Sale also states, "[i]t is agreed that BUYER shall build on SELLER'S property a HOME as defined in

---

[3]  Specifically, Nakkim cites the following provision from the Agreement of Sale:

> (f) Consents. Any consents necessary under this agreement will not be unreasonably withheld. Any transfer of this agreement by BUYERS to another party will require consent of the SELLER.

CONSTRUCTION CONTRACT documents." In other words, under the Agreement of Sale, both Mr. Peck and Mrs. Peck, as the "Buyer[s]" are required to build the Nakkim Residence. Neither agreement states that Mr. Peck is a licensed contractor or that he is required to maintain a valid state contractor's license in order to perform.

Second, "[a]n 'assignment' is a transfer of property or some other right from one person (the 'assignor') to another (the 'assignee'), which confers a complete and present right in the subject matter to the assignee." 6 Am. Jur. 2d Assignments § 1 (footnotes omitted).

Here, Mr. Peck's declaration attached to the Memorandum in Opposition to Motion to Prohibit states, *inter alia*, that he did not need a license to supervise or manage a construction project and that Kimo Kahele Construction has worked with Peck, Inc. for over fifteen years. At the hearing on October 31, 2019, Plaintiffs' counsel asserted that Mr. Peck controls Peck, Inc., that he will be on-site to assist in building the Nakkim Residence and that there would be a licensed contractor of record to work with Mr. Peck. Therefore, even if the Construction Contract is an unassignable personal service contract between Mr. Peck and Nakkim, the proposed arrangement between Mr. Peck and a licensed contractor is not an "assignment" because the Plaintiffs are not transferring any rights.[4] Instead, to have a licensed contractor build the Nakkim Residence, Plaintiffs are delegating

---

[4]     The principle that most rights under contracts are freely assignable is subject to the exception that executory contracts for personal services or those involving a relationship of confidence are not assignable unless the contract so provides, the other party consents to or ratifies the assignment, or the assignment would not change the character of the performance or the obligation.

6. Am. Jur. 2d Assignments § 26 (emphases added) (footnotes omitted).

Thus, even if the Construction Contract is an unassignable personal services contract, and Peck, Inc.'s use of another licensed contractor is an "assignment," Nakkim does not explain how the assignment would change the character of the performance or the obligation of Mr. Peck who will still supervise and work with the licensed contractor, or change the obligation of the Pecks to build the Nakkim Residence for Nakkim under the Agreement of Sale.

their duties to a third party. Black's Law Dictionary defines "delegation" as "[t]he act of entrusting another with authority or empowering another to act as an agent or representative[.]" Black's Law Dictionary 536 (11th ed. 2019). "[D]elegation of duties" is defined as "[a] transaction by which a party to a contract arranges to have a third party perform the party's contractual duties." Id. Such delegation would not relieve the Pecks of their obligation under the Agreement of Sale to build the Nakkim Residence.

Finally, contrary to Nakkim's assertion that Plaintiffs' duties cannot be delegated, the Construction Contract states, in pertinent part:

> [Peck, Inc.] accepts the relationship or trust and confidence established by this Agreement and convenience with the Owner to cooperate and utilize [Peck, Inc.'s] best skill, effort and judgment in furthering the interests of the Owner. And to furnish efficient business administration and supervision; to make best effort to furnish at all times an adequate supply of workers and materials; and to perform the Work in the best way and most expeditious and economical manner consistent with the interests of the Owner.
>
> . . . .
>
> 5. SUPERVISION AND PROCEDURES: [Peck, Inc.] shall supervise and direct the Work, using [Peck, Inc.]'s best skill and attention. [Peck, Inc.] shall be solely responsible for and have control over construction means, methods, techniques, sequences and procedures and coordinating all portions of the Work under the Contract, unless Contract Documents give other specific instructions concerning these matters.

(Emphases added). The Construction Contract allows for Peck, Inc. to supply workers and have sole control over the construction methods without seeking approval from Nakkim, including delegation of work to a licensed contractor. Thus, the Circuit Court did not err in denying Nakkim's Motion To Prohibit.

## C. The Circuit Court Did Not Err In Granting The Pecks' Motion To Release Deeds

Nakkim contends that the Circuit court erred in prematurely releasing the Mt. View Property deed to the Pecks because the Pecks have not started construction of the Nakkim Residence and Nakkim did not receive the credit for the first $92,587.58 of payments under the Construction Contract.

10

"The awarding of specific performance is a matter addressed to the sound discretion of the trial court ... and its decision will be set aside only where there has been a manifest abuse thereof." Clarkin v. Reimann, 2 Haw. App. 618, 623, 638 P.2d 857, 861 (1981) (citations omitted). A manifest abuse of discretion occurs where the lower court's decision "clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." Id. at 624, 638 P.2d at 861 (citations omitted).

In the First Appeal, this court held the Circuit Court erred in ordering specific performance "without entering a finding that Nakkim was threatening to or in actual breach." Peck v. Nakkim, 2013 WL 6762359 at *9 (citing Kaleikau v. Hall, 27 Haw. 420, 430 (Haw. Terr.1923) and Hawaiian Paradise Park Corp. v. Friendly Broad. Co., 414 F.2d 750, 758 (9th Cir.1969)). On remand after the First Appeal, however, the Circuit Court made the following express finding in the Amended FOFs/COLs:

> 21. Based on the Findings of Fact, the court makes the mixed Finding of Fact and Conclusion of Law, that Defendant NAKKIM threatened to breach and/or breached the agreement encompassed by the Agreement of Sale and the Construction Contract and that Nakkim unequivocally repudiated the agreement.

(Emphasis added). This finding is uncontested and we are thus bound by it on appeal. Okada Trucking Co., 97 Hawai'i at 458, 40 P.3d at 81. In the Amended FOFs/COLs, the Circuit Court made the same ruling in its COL 4. Thus, in terms of ordering specific performance against Nakkim, the Circuit Court on remand remedied an error previously noted in the First Appeal.

In the Motion To Release Deeds, the Pecks sought to file and record title to the property in their name "to protect [their] beneficial interest in the Mt. View property." Furthermore, in the Amended FOFs/COLs, the Circuit Court found that "[the Pecks] have expended in excess of $120,000.00 in improvements upon the Mt. View land purchased by them to construct a dwelling thereon and taken other actions, in reliance on the Agreement of Sale." During an evidentiary hearing on

11

January 31, 2019, Mr. Peck testified that the Pecks could not obtain liability insurance coverage for the Mt. View Property because their names were not on the deed. During the same hearing, Nakkim also testified that she was unable to obtain insurance for the Pecks because she had no control or access to the property.

Nakkim argues that transfer of title for the Mt. View Property is premature because the Agreement of Sale provides, "[l]egal title to the [Mt. View Property] shall remain in the SELLER until the BUYER has done everything they are required to do under this agreement[,]" including the construction of the Nakkim Residence under the Construction Contract and credit for the first $92,587.58 for the construction.[5] In the First Appeal, we held that "construction of the [Nakkim Residence] was clearly an obligation, nonperformance of which would constitute default." 2013 WL 6762359, at *6. We further concluded that "construction of the [Nakkim Residence] was not a condition precedent, but rather, part of the consideration for the transfer of the [Mt. View] Property." Id.

Importantly, the Circuit Court made unchallenged FOFs that the delay in the construction of the Nakkim Residence was not the fault of Plaintiffs, but was primarily attributable to

---

[5] Nakkim also cites the following provisions of the Agreement of Sale in support of her argument:

> "CONSTRUCTION CONTRACT" The Contract between the SELLER and BUYER for the construction of a HOME on SELLER'S property. Said CONSTRUCTION CONTRACT CONTRACT [sic] shall be balance of the payment made for PROPERTY.
>
> . . . .
>
> FINAL CLOSING. Upon final payment of all principal and interest due under this agreement, SELLER agrees to fully convey all their rights, title and interest in the property in BUYER, free and clear of all liens, mortgages, etc.
>
> . . . .
>
> (d) Upon full payment SELLER will execute a Warranty Deed in favor of the BUYER.

Nakkim's delays and failure to obtain necessary approvals for the construction in a timely manner.[6]

---

[6] In the Amended FOFs/COLs, the Circuit Court made the following relevant findings:

10. The Court finds that increase in the cost of construction costs which arose during delay in the commencement date of construction is a reasonable ground for seeking an increase in the Construction sum if the delay was not the result of fault on the part of Plaintiff Peck Inc.

11. [Nakkim] was responsible for obtaining approvals from the Design Committee of the Waiki'i Ranch Homeowners' [sic] Association ("Design Committee"). In order to build her house, [Nakkim] was required to obtain a variance from the [D]esign [C]ommittee to allow for a trapezoidal building area. On August 19, 2004, the Design Committee gave notice to the members of the Waiki'i Ranch Homeowners Association of a public hearing to consider [Nakkim's] application for a variance.

12. On September 28, 2004, the Design Committee approved the variance and also preliminarily approved [Nakkim's] project plans. The preliminary approval required that [Nakkim] meet certain conditions, including the submission of a landscape plan. Therefore, [Nakkim] could not have given notice to [Mr. Peck] to begin construction on [Nakkim's] Waiki'i Ranch property until after November 5, 2004.

13. As a result, the Court finds that the delay in the start of construction on [Nakkim's] Waiki'i Ranch property was not the fault of Plaintiffs, but primarily attributable to [Nakkim's] failure to get approvals from the Design Committee in a timely fashion.

. . . .

19. On Page 4 of the Memorandum Opinion, the ICA noted:
"In response, Nakkim sent Peck a letter on July 21, 2004, in which she stated that "a deal was a deal," and began to take over payments on the Continental Pacific Mortgage "in anticipation of [Peck's] defection[.]" Additionally, Nakkim wrote that she would increase the sale price of the Property if he wanted to renegotiate the price of the Home."

"As early as October 7, 2004, Nakkim began listing the Property for sale. Then, through a November 4, 2004 letter, Nakkim gave Peck, Inc. seven days to complete the Home. Citing the "Termination of Contract by Owner" clause of the Construction Contract, Nakkim alleged that Peck had "persistently and repeatedly failed to perform the work according to the contract and its specifications," and that such delays entitled her to "finish the work by whatever reasonable method [she] the owner may find expedient." This ultimatum was reiterated in a November 5, 2004 letter, which also informed Peck that the "entire matter" was cancelled.
(continued...)

13

As noted, the Circuit Court also found that Nakkim threatened to breach and/or breached the agreement, and that she unequivocally repudiated the agreement. Finally, the Circuit Court made the unchallenged conclusion of law that based upon the FOFs and drawing all reasonable inferences therefrom, "[the Pecks] have substantially complied with the terms and conditions of the Agreement of Sale and are entitled to specific performance of the Agreement of Sale." We further note that this litigation has been ongoing for nearly seventeen years since Plaintiffs' complaint against Nakkim in 2004. Given the Circuit Court's unchallenged FOFs/COLs, the Circuit Court did not manifestly abuse its discretion in awarding specific performance to the Pecks.

Finally, Nakkim fails to provide any cogent argument that the Circuit Court's Order To Release Deeds clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to her substantial detriment. To the contrary, Nakkim received the payment of the Pecks' outstanding financial obligation and obtained a lien on the Mt. View Property to protect her interest in the Mt. View Property should the Pecks fail to perform according to the Agreement of Sale and the Construction Contract. In the Order To Release Deeds, the Circuit Court specifically stated:

> 1. The Motion to Release Deeds for Filing is hereby GRANTED subject to the filing of a lien on the Mt. View portion of the property regarding Plaintiffs' obligations to

---

[6](...continued)
> However, it appears that, as of November 5, 2004, Nakkim had not obtained final approval to begin construction of the Home."

> The above statements of fact in the Memorandum Opinion of the ICA are hereby adopted as Findings of Fact by the court.

> 20. In addition, based on Exhibit 80, the Court finds by a letter dated August 12, 2004 from [Nakkim] to [Mr. Peck], that Nakkim had offered to [Mr.] Peck to modify the Agreement of Sale by increasing the amount payable under the Agreement of Sale in exchange for an increase in the charges under the Construction Contract or deleting the Construction Contract and increasing the amount payable [in] the Agreement of Sale.

14

perform under the Construction Contract portion of that integrated contract consisting of the Agreement of Sale and the Construction Contract both dated November 29, 2003. The Deeds held by the Court shall be released to the Plaintiffs or their counsel of record upon the filing of this Order and the lien.

The Order To Release Deeds also benefitted Nakkim by releasing the balance deposited by the Pecks for their outstanding financial obligation of $135,000 to Nakkim under the Agreement of Sale. Thus, the Circuit Court did not clearly exceed the bounds of reason or disregard rules or principles of law or practice to the substantial detriment of Nakkim by releasing the Mt. View Property deed to the Pecks as specified in its Order To Release Deeds.

## IV. Conclusion

For the foregoing reasons, we affirm the following entered by the Circuit Court of the Third Circuit: (1) "Order Denying Defendant's Motion to Prohibit Plaintiffs From Performing Without a Valid State Contractor's License" filed November 29, 2019; (2) "Order Granting Motion to Release Deeds for Filing" filed November 29, 2019; and (3) "Order Denying Defendant's Non-Hearing Motion to Reconsider, Alter or Amend 'Order Granting Plaintiff's Motion for Release of Deeds Filed October 11, 2019'" filed February 3, 2020. The case is remanded to the Circuit Court.

DATED: Honolulu, Hawai'i, October 29, 2021.

On the briefs:

Michael S. Zola,
for Defendants-Appellants.

Douglas L. Halsted,
for Plaintiffs-Appellees.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Katherine G. Leonard
Associate Judge

/s/ Keith K. Hiraoka
Associate Judge