*Lorrin Andrews* and *C. S. Smith* for appellant.

---

## OOKALA SUGAR PLANTATION COMPANY *v.* JOHN WILSON.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

SUBMITTED AUGUST 3, 1900.     DECIDED OCTOBER 29, 1900.

FREAR, C.J., GALBRAITH, J., AND W. A. WHITING, ESQ., OF THE BAR, IN PLACE OF PERRY, J., ABSENT.

Parol evidence is admissible for the purpose of removing latent ambiguities and locating the land described in a Patent.

In construing a Patent and locating the land all parts of the Patent must be considered, and mistakes in certain calls may be corrected by reference to other calls and the land to which they are applicable.

OPINION OF THE COURT BY FREAR, C.J.

This is an action of assumpsit brought by the plaintiff as tenant of the defendant to recover an alleged excess of rent claimed to have been paid under a mutual mistake of facts.

The defendant leased to the plaintiff the land in the District of Hamakua, Island of Hawaii, covered by Royal Patent (Gr.) 2376 to Kama and Peniamina, at an annual rental of seven dollars per acre. The plaintiff paid rent eight years and a half for an area represented by A B C E on the diagram and then

claimed that the true area was as represented by A B C D, the difference in area, represented by D C E, being about forty acres, and brought this action for the amount, $2,975, paid for these forty acres and ten acres more during that period. The only part in question in this court is the forty-acre tract.

The defense was two-fold, (1) that the plaintiff, having been put in possession of D C E by its landlord, was estopped from denying the latter's title thereto, and (2) that D C E is in fact included within the boundaries of defendant's land.

The case was tried by the court, jury waived, and judgment rendered for the defendant upon the second ground of his defense, the court assuming for the purposes of the case that the first ground was untenable.

The question was whether the westerly boundary of the land covered by the grant was C D or C E. The burden was on the plaintiff to show by a preponderance of evidence, in order to maintain its action, that the correct line was C D. The case comes here on twelve exceptions to the admission of evidence, an exception to the decision of the court on the ground that it was contrary to the law and the evidence and exceptions to all findings of fact and rulings therein, and to the overruling of a motion for a new trial. The only exceptions now relied on are those taken to the admission of parol evidence with reference to the location of the boundary in dispute.

The notes of survey are in English as follows:

"Grant 2,376, Kama and Beniamina, Niupea and Kaapahu, Hamakua.

Compass courses corrected for 8° variation. Begin at Government Road, West edge Kaiwiki Gulch, and running—

1. N. 7° 00′ W. 2,400 feet to a puhala tree on sea bluff crossing Kaholo Gulch at 5 chains.

2. N. 68° 00′ W. 2,000 feet along sea coast to Keehia.

3. S. 12° 00′ E. 3,200 feet.

4. Due East 1,250 feet along Government Road to initial point, containing 140 acres."

The Grant is in Hawaiian. The portion (translated) describing the land follows the notes of survey in the main, but differs from them in several particulars. For instance:

9

The second course is described, not as running along the sea coast, but as running to the boundary (not corner) of Keehia.

· The third course is described as running to the Government Road.

The fourth course is described, not as along the Government Road, but as running to the initial point.

The course and distance of each side is given. These, plotted, without reference to the monuments mentioned, make the figure A F G H, which both parties agree is incorrect, every course and every distance, excepting, as claimed by the plaintiff, the last distance, being erroneous.

Taking the monuments into consideration, it is agreed that the initial point is at A and that the first call runs to B, a point described as a Puhala tree on the precipice overlooking the sea, although the course and distance both differ widely from those mentioned in the Patent. It does not appear just how the point B was found, unless on the testimony (parol evidence) of old residents, as at the time the survey was made the entire coast line on this land was thickly wooded with Puhala trees and the tree testified to as now or recently at B was too young to have been there at the date of the Patent.

The second call is likewise agreed to be erroneous as to the course and distance specified in the Patent. The plaintiff, relying on the notes of survey, contends that the natural monument mentioned (the sea coast) controls the course, and that the artificial monument (the land of Keehia) controls the distance. The defendant agrees with this. And yet the notes of survey are parol or extraneous evidence, inasmuch as under our laws the Patent controls and this does not mention the sea coast in connection with this call, and it does not require this line to run to the corner of Keehia but merely to its boundary. If the prescribed course were followed, unmodified by extraneous evidence, it would run to a point south of C on the line of C P. (There is a diagram on the face of the Patent which shows that this course runs along the coast, but at present we are considering only the description contained in the Patent.)

The third and fourth calls may be considered together. It is

agreed that the third is grossly erroneous as to the distance speci-
fied and the fourth as to the course.  The notes of survey name
no monument in connection with the third call but describe the
fourth as along the road to the initial point, while the Patent des-
cribes the third as running to the road and the fourth merely as
running to the initial point.  As matter of fact the fourth does
not run along the road all the way, (see diagram) or, if it does,
then the 1,250 feet do not run from the initial point the whole
distance to D, the point contended for by the plaintiff.

The area called for by the courses and distances in the Patent
(A F G H) is 95 acres; that mentioned in the Patent, 140
acres; that of plaintiff's plot, A B C D, 177.5 acres; and that of
defendant's plot, A B C E, 218.3 acres.

The plaintiff contends that the first and second calls are def-
initely fixed by monuments and that the third course (disregard-
ing the distance) and the fourth distance (disregarding the
course) when taken in connection with the monument mentioned
(the road) and the initial point, will, after allowing for such
slight errors as might be expected under the circumstances, close
the survey and that parol evidence is inadmissible to control the
third course and the fourth distance.

It is settled that if there is a patent ambiguity, that is, one
apparent on the face of the grant, parol evidence is inadmissible
to explain it.  In such case the grant is void.  It is also settled
that if there is no ambiguity, patent or latent, parol evidence is
inadmissible to vary or contradict the terms of the grant.  In such
case the question is one of construction to be determined by the
court upon a consideration of the grant itself.  But it is equally
well settled that if there is a latent ambiguity, that is, one aris-
ing from matters outside the grant, parol or extraneous evidence
is admissible to explain it, for if it arises *aliunde* it may also be
explained *aliunde*.  It is also settled that parol evidence is ad-
missible when the question is one of location as distingushed from
one of construction, that is, such evidence is admissible to con-
nect the land with the grant or to apply the grant to the land.  It
is also settled that in construing a grant and locating the land all
parts of the grant must be considered, and that mistakes in certain

calls may be corrected when shown to be mistakes by other calls taken in connection with the land. It is also settled that although as a rule natural monuments control artificial monuments and the latter control courses and they in turn control distances and these control areas, yet any of these may control any others where that appears to be the intention as gathered from the entire grant and its application to the land, for the object is to ascertain the intention, and monuments and courses and distances for instance as a rule control areas because they are as a rule more certain and there is less likelihood of a mistake being made as to them, but where this reason fails the rule itself fails.

Now looking at this Patent and the land to which it applies in the light of these principles, what do we find in support of the respective claims for C D and C E? If we look at the description in the Patent alone we have no difficulty in plotting the figure A F G H. There is no patent ambiguity. But both parties agree that every course and every distance, except perhaps the last distance, is found to be erroneous when an attempt is made to apply the Patent to the land. Then in order to get either C D or C E, we first lay off A B, the first call, disregarding both course and distance, and being governed as to distance by a terminal natural monument, the precipice overlooking the sea, not by any monument as to course,—fixing this by parol evidence in the shape of testimony of old residents. Then we lay off B C disregarding both course and distance, and being governed as to course by extraneous evidence found in the notes of survey, (disregarding for the present the diagram on the Patent) and as to distance by the boundary of Keehia. So far both parties agree. Then we lay off either C D or C E disregarding in either case the distance, being governed as to this by the terminal monument, the road, and disregarding the course slightly in the case of C D and more in the case of C E. We then lay off D A or E A disregarding the course in each case, being governed as to this by the initial point, and disregarding the distance in the case of E A.

Then the plaintiff, in order to get C D, would have us regard the third course and fourth distance as substantially correct as

matter of law because they happen to close the survey if we disregard not only the third distance and the fourth course and the monument (the road) mentioned in connection with the fourth course in the notes of survey which we had to consult in order to get the second course, and if we disregard in addition all the mistakes made in connection with the first and second calls and the area, which had to be corrected before we could get to where the third course and fourth distance would close the survey.

The defendant, in order to get C E, would have us regard the Patent as a whole and in connection with what it refers to, namely, the land covered by it and the adjoining land of Keehia, and contends that when so taken it shows that C E is the correct line, for the following among other reasons. In the first place, considering that every statement made in the Patent by way of describing this land is known to be erroneous, except the third course and fourth distance, there is to begin with a strong probability that these also are incorrectly stated. Secondly, there are certain considerations which not only make this practically certain, that C D and D A are incorrect, but also make it practically certain that C E and E A are approximately correct. (1) Call three runs to Keehia. It is therefore necessary to locate Keehia, but in doing so it is found that the description in the Patent of Keehia, the survey of which was made by the same man, one Young, who made the survey in question, is as erroneous as that in the Patent in question both as to courses and distances, but that by reference to the monuments mentioned, its east boundary is found to be P C. But in order to get this, the whole survey has to be swung to the east about 14°, on one of its southern corners as a pivot, the reason being that the surveyor applied the correction for the variation of the needle the wrong way. This naturally suggests that he might have done the same thing in the case of the survey now in question. If, acting on this idea, the figure A F G H is swung to the east twice the variation of the magnetic from the true meridian, that is, 16° (the notes of survey show that the surveyor took 8° for the variation) we get the figure A X Y Z, which closely resembles in shape the figure contended for by the defendant. This would largely explain the

mistakes in the courses. There would still be some error which could perhaps be explained by the fact that Young was not a professional surveyor and probably had poor instruments and did not pretend to great accuracy, as he did not take account of fractions of degrees in his courses or anything but multiples of fifty in his distances. It is notorious that in those days, the early fifties, much of the surveying in these islands was done by incompetent men and with poor instruments. It may be, also, that the line A B is located incorrectly too far to the east. There seems to be no certainty that it was located accurately. It will be noticed that Y Z is approximately parallel to C E, the line claimed by the defendant. (2) As to distances, it is noticeable that A B and C E, opposite sides, are each about 32% longer than the distances called for in the Patent, and that B C and E A, also opposite sides, are about 68° and 69 % respectively longer than the distances called for in the Patent. It is not probable that this was accidental. Just how the mistake was made does not appear. It may have been through mistakes in triangulation, or through using a chain of a different length from that which the surveyor supposed he was using or through mistakes in converting feet into chains or *vice versa.* For instance, A B is 3,160 feet in length. The distance given in the Patent is 2,400 feet. If Young used a surveyor's chain of 66 feet and thought it a 50 foot chain and laid off 48 chains, he would by converting them into feet, get the 2,400 feet mentioned in the Patent, although he actually measured 3,160 feet, the real distance. 66 exceeds 50 by 32° as 3,168 or 48 chains does 2,400. The surveyors who located the land as A B C E give a different explanation, having learned that Young at one time in fact used in connection with other surveys a fifty foot chain and thought it a fifty link chain. But this evidence as to other surveys was excluded by the trial judge so far as it bore on this question and we shall not consider it. We rely, as did the trial judge, in this part of the discussion, simply on the similarity of the percentages of the excess of opposite sides on the land over the corresponding sides in the description in the Patent and suggest possible ways of accounting for this on the theory that the similarities were not mere acci-

dental coincidences.   This theory is further borne out by evidence of a most significant character appearing upon the face of the Patent itself.   We have already alluded to a plot or diagram on the Patent.   It is represented by A M N O on the diagram herein after being swung to the east twice the variation of the needle.   It is made, as there expressly stated, upon a scale of 12 chains to an inch.   This shows, taken in connection with the description, that the surveyor did attempt to convert chains to feet or *vice versa*.   According to this scale the line A M corresponding to A B does in fact measure about 48 chains or 3,168 feet; the opposite line corresponding to C E or C D measures about 63 chains or 4,158 feet, which is much nearer the length of C E than that of C D and may be regarded as fairly accurate considering the distance measured and the rough and wooded nature of the land; and the line O A corresponding to E A or D A measures about 30 chains or 1,980 feet, which is very much nearer E A than D A.   The second call on the diagram differs considerably from B C on account of the angle O A M having been incorrectly plotted.   But it is very significant that the angle at O, on the Patent at the other end of the fourth call is approximately the same as that at E and not that at D.

If the notes of survey are used to determine course two by the sea, they also destroy the plaintiff's contention as to course and distance four, if the monument, the road, controls.   If the diagram on the Patent is used to determine course two by the sea, it also destroys plaintiff's course and distance three and distance four.   If neither notes nor diagram are used to determine course two by the sea, the course named in the Patent must be followed, which would run from B to a point south of C on C P, in which case plaintiff's course three on which it relies would be destroyed if the line were run to D, and, if it were not run to D, but followed the course named in the Patent it would destroy plaintiff's distance four on which it relies.

The Circuit Court held that the plaintiff had failed to prove, as it was obliged to do in order to sustain its case, that the line C D was the correct one.   It so found apparently from a consideration of the Patent itself and without regard to the evidence

objected to. It then went further and found on all the evidence that C E was the correct line and added that this was also the practical construction put upon the description for many years by the parties hereto and their predecessors, including the Government, which is the owner, and the lessees, of the adjoining land P O E, which is now leased to the plaintiff. We cannot say that the trial court erred. Indeed, if a new trial were ordered, on the ground that extraneous evidence was improperly considered, the trial judge would be more likely than at the first trial to find against the plaintiff, considering that at the first trial it apparently paid little or no attention to the extraneous evidence in so far as it found against the plaintiff and that since then in this court much additional ground has been discovered in the Patent itself to sustain the conclusion of the trial judge. But in our opinion little if any evidence was improperly admitted. Evidence as to mistakes made by the same surveyor in other surveys in the same district was, upon plaintiff's objection, ruled out so far as it was sought to be introduced for the purpose of explaining the mistakes in this survey. It was admitted to some extent only by way of testing the conclusions of the surveyors who had located this land, whether for the plaintiff or for the defendant. This disposes of four of the exceptions. We express no opinion as to whether such evidence was properly ruled out so far as the other ground is concerned. Another exception was taken to the allowing of the question whether if the survey in question were swung around double the variation of the needle as was done in the case of Keehia, it would explain in any way the difference between the course A B and that mentioned in the Patent. This question could be answered as well by any one looking at the diagram as by the witness and whether the question were proper or not, it could do no harm. Another exception was taken to the question asked of a surveyor as to his conclusion as to the location of the land, the objection being based on the ground that the surveyor should confine his conclusion to certain reasons or grounds. His reasons or grounds could be tested on cross-examination. Another exception was taken to the question whether the witness had learned anything since making the survey to lead

him to believe C D was not more correct than C E. There was no valid objection to this question. The force of his answer would depend on what he had learned and how he had learned it, not on when he had learned it. Two exceptions were taken to the admission of evidence that the defendant delivered possession and plaintiff's manager took possession up to the line C E under the lease. The object of this was to support the defense of estoppel which the court assumed for the purposes of the case was untenable. Two exceptions were taken to testimony as to what action a certain surveyor had taken as the representative of the government, this being offered to show that the government, which owned the adjoining land which also the plaintiff held under lease, had after careful investigation admitted that C E was the correct boundary. The trial court apparently did not consider this in finding that the plaintiff had failed to prove that C D was the correct line. It mentioned it as one of similar matters in finding that C E was the correct line. The evidence practically amounted to a statement of the surveyor's conclusion as to the correct line. Whether it was properly admitted or not we need not say. If it was not, it is clear that its rejection would have made no difference in the findings of the trial judge.

The plaintiff relies largely on *Hall v. Eaton*, 139 Mass. 217. That case recognizes the principles upon which we have proceeded and contains nothing inconsistent with the reasoning and conclusions in this case. The application of these principles in that case led to a different conclusion because the facts were different.

The exceptions are overruled.

*Kinney, Ballou & McClanahan* for the plaintiff.

*L. A. Thurston* for the defendant.