617 P.2d 578 (1980)
In the Matter of the Application of SING CHONG COMPANY, LIMITED, to register title to real property situate at Kaalaea, Koolaupoko, Oahu, State of Hawaii.
Harry Shinsuke KANESHIRO and Margaret Haruko Kaneshiro, Petitioners-Appellants,
v.
Dorothy Oriu YAMASHIRO, Respondent-Appellee.
No. 6660.
Intermediate Court of Appeals of Hawaii.
October 3, 1980.
*580 Mitsuo Uyehara, Honolulu, for petitioners-appellants.
Charles M. Tonaki, Hong & Iwai, Honolulu, for respondent-appellee.
Before HAYASHI, C.J., and PADGETT and BURNS, JJ.
BURNS, Judge.
Petitioners-Appellants appeal the lower court's order dated January 11, 1977, which enforced an agreement of sale by subdividing Lot K-1 of Land Court Application No. 1594 into Lots K-1-A and K-1-B and requiring petitioners-appellants to convey to respondent-appellee title to Lot K-1-B together with an easement over Lot K-1-A.
By Agreement dated November 13, 1948, petitioners-appellants, herein the "Sellers", agreed to purchase Lot K of Land Court Application No. 1594 of Sing Chong Co., Ltd., from Sing Chong Co., Ltd. On August 24, 1957, while Land Court Application No. 1594 was still being processed, the Sellers entered into a written "Memorandum" agreement with respondent-appellee and her husband,[1] herein the "Buyers", that upon approval of Land Court Application No. 1594 and conveyance of Lot K the Sellers would subdivide Lot K into parcels "X" and "Y" and would convey parcel "X" to Buyers. The Buyers agreed to pay $8,600.00, $5,800.00 of which was paid upon execution of the agreement and $2,800.00 of which was due upon approval of the subdivision by the City Planning Commission.
By letter dated June 10, 1958, Buyers advised Sellers that they intended to build on parcel "X" reserving the right to dispose of the improvements in the event the purchase was not consummated. Subsequently, the Buyers built a house on parcel "X".
Sing Chong Co., Ltd., received their registered title on September 6, 1962. The Sellers received registered title to Lot K-1 (the Land Court's name for Lot K) on July 2, 1963. The August 24, 1957 agreement was noted on the Sellers' Transfer Certificate of Title as an "Agreement of Sale."
On August 31, 1973, the Sellers filed a petition to cancel the agreement of sale, for writ of possession and for payment of reasonable rental.
After myriad hearings, the lower court entered an order dated April 4, 1975 requiring Buyers to "proceed with construction of a roadway as shall be approved by the City and County of Honolulu, sufficient for the eventual subdivision of Lot K-1 into Lots K-1-A and K-1-B".
Thereafter, on January 11, 1977, the lower court entered an order which subdivided Lot K-1 into Lots K-1-A and K-1-B and required Sellers to convey to Buyers Lot K-1-B together with an easement over Lot K-1-A and ordered Buyers to pay the balance due. Sellers' original petition to cancel the agreement of sale was denied.

I.
This matter was tried by the lower court without a jury. The Hawaii Rules of Civil Procedure (HRCP) are applicable. HRCP, rule 81(b)(1). The lower court failed to enter findings of fact and conclusions of law as required by HRCP, rule 52(a). Neither party raised this issue on appeal. Since findings are not jurisdictional, we may remand for findings or we may decide the appeal without further findings if we determine that we are in a position to do so. 9 Wright & Miller, Federal Practice and Procedure: Civil § 2577.
*581 Upon reviewing the record and the briefs, we are convinced that there is no dispute concerning essential facts in this case and that there is no doubt what conclusions of law the lower court came to in entering the order from which Sellers appeal. Consequently we will decide this appeal notwithstanding the absence of findings of fact and conclusions of law.

II.
The Sellers assert that the "Memorandum" is not a contract because it lacks the certainty required in a contract, in that it is too indefinite, incomplete and uncertain. We disagree.
The Sellers cite two parts of the agreement as being incomplete and uncertain:
1. The part which says: "The boundaries of proposed Parcel X are approximate only and may be modified depending upon the outcome of said Land Court Application No. 1594 of Sing Chong Co., Ltd."
2. The part which says that Buyers "shall construct and complete, at their own cost and expense, a roadway of sufficient width and in accordance with the standards as shall be approved by the City Planning Commission to serve parcel "X".
As a matter of policy, the law leans against the destruction of contracts for uncertainty. Courts favor the determination that an agreement is sufficiently definite. We will, if possible, so construe the agreement as to carry into effect the intention of the parties. 17 Am.Jur.2d, Contracts, § 75.
We read Francone v. McClay, 41 Haw. 72 (1955) as authority for the following statements of law:
1. An agreement of sale of land which contains complete and certain essential terms is a valid and enforceable contract if the facts indicate that the parties at the time it was entered into had no expectation of further provisions to be negotiated later. Essential terms are the identification of the parties, a description of the property sold, the price, the time and manner of payment and any other terms in the agreement which are essential to the agreement.
2. In the situation where the agreement does not specify or fully express an essential term but does specify the method of ascertaining it, that term shall be deemed to be complete and certain.
3. In the situation where the agreement does not specify or fully express all of the non-essential terms, the usual terms will be implied in law.
Bishop Trust Co., Ltd. v. Kamokila Development Corp., 57 Haw. 330, 555 P.2d 1193 (1976) is authority for the rule that where an agreement does not provide time for performance it must be read as requiring that performance be commenced within a reasonable time.
Here we have a written agreement which specifies the parties, the land being purchased and sold, the price and when it was to be paid, and the rights and obligations of each party with respect to the land and each other prior to the contemplated conveyance. We hold that this agreement is complete and certain as to its essential terms. There is no suggestion on the record that the parties expected to conduct further negotiations. Therefore, we rule that it is a valid and enforceable contract.

III.
The Sellers assert that they are entitled to cancel the agreement because the Buyers took too much time to construct and complete the roadway which the agreement required them to do. We disagree.
It is true that Buyers did not construct the roadway until after Sellers commenced these proceedings. It is also true that Sellers did everything they could to prevent the Buyers from obtaining approval from the city for anything but a 40-foot wide roadway and that they did not take the action they were required to take to subdivide Lot K into parcels "X" and "Y". The Buyers were no more responsible for the delay than were the Sellers. We will not allow the Sellers to take advantage of a delay for which they were at least 50 percent responsible. *582 See Kahili, Inc. v. Yamamoto, 54 Haw. 267, 506 P.2d 9 (1973).

IV.
The Sellers assert that the Buyers should have been required to build a roadway to "normal and usual subdivision standards" rather than the modified standards actually required. What they really want is a roadway 40 feet wide rather than a roadway 20 feet wide.
The agreement required the Buyers to build a roadway which satisfied the city's requirements. The record is clear that the city is satisfied with the 20-foot wide roadway. Sellers received all they are entitled to and they have no legal basis to complain.

V.
The Sellers assert that the court erred in its designation of the boundary between parcels "X" (Lot K-1-B) and "Y" (Lot K-1-A). We disagree.
In its order of January 11, 1977, the lower court designated "course 87° 53' 30" 229.31 feet as the boundary between said two lots so as to provide the following results:
(a) Lot K-1-A shall contain 54,130 square feet; and (b) Lot K-1-B shall contain 49,307 square feet".
The agreement contained two items relevant to the area and boundaries of parcel "X" (Lot K-1-B):
A. Parcel "X" "contains an area of 49,307.7 square feet, or 1.1319 acres, more or less".
B. "The boundaries of proposed Parcel X are approximate only and may be modified depending upon the outcome of said Land Court Application No. 1594 of Sing Chong Co., Ltd."
The map attached as an exhibit to the agreement also contained two items relevant to the area and boundaries of parcel "X" (Lot K-1-B):
A. Parcel "X's" area was stated to be "49,307.7 sq. ft. or 1.1319 acres".
B. Each boundary had a specified azimuth and distance. The boundary between parcel "X" and parcel "Y" (Lot K-1-A) was specified as "83° 45' 30" 214.79 feet".
The court was confronted with a problem[2] because the agreement's east-west line running 83° 45' 30" 214.79 feet did not reach the common eastern boundary of parcels "X" (Lot K-1-B) and "Y" (Lot K-1-A). However, the line 87° 53' 30" 229.31 feet ended at the common eastern boundary of both parcels and caused parcel "X" (Lot K-1-B) to contain 49,307 square feet. The lower court therefore designated this latter line as the boundary.
Sellers argue that in the event of a conflict between course and distance and area then course and distance will control.
Hawaii's rule is stated in Ookala Sugar Co. v. Wilson, 13 Haw. 127, 132 (1900).
... It is also settled that although as a rule natural monuments control artificial monuments and the latter control courses and they in turn control distances and these control areas, yet any of these may control any others where that appears to be the intention as gathered from the entire grant and its application to the land, for the object is to ascertain the intention, and monuments and courses and distances for instance as a rule control areas because they are as a rule more certain and there is less likelihood of a mistake being made as to them, but where this reason fails the rule itself fails.
In our view, when the application of the stated course and distance to the fourth side of a parcel fails to close the boundary then the specified area may be relied upon to determine the appropriate course and distance of the fourth side.

VI.
We have determined all of Sellers' other specified errors to be without merit.
Affirmed.
NOTES
[1] The respondent-appellee's husband died in 1972.
[2] The record suggests that this problem was caused by a change in the eastern boundary of Lot K when Sing Chong Co., Ltd., originally subdivided and registered its land.