**HONOLULU WATERFRONT LIMITED PARTNERSHIP, et al., Plaintiffs,**

v.

**ALOHA TOWER DEVELOPMENT CORPORATION, et al., Defendants.**

**ALOHA TOWER DEVELOPMENT CORPORATION, et al., Plaintiffs,**

v.

**HONOLULU WATERFRONT LIMITED PARTNERSHIP, et al., Defendants.**

Civ. Nos. 87–0718–VAC, 87–0732–ACK.

United States District Court,
D. Hawaii.

July 8, 1988.

Steven J. McHugh, Honolulu, Hawaii, for plaintiffs.

Melvin Kaneshige, Andrew Beaman, Leroy Colombe, Honolulu, Hawaii, for Aloha Tower.

Robert A. Marks, John Anderson, Deputy Attys. Gen., Honolulu, Hawaii, for State of Hawaii.

## ORDER

KAY, District Judge.

### I.

Aloha Tower Development Corp. ("ATDC"), defendant in Civ. No. 87–0718 and plaintiff in the consolidated case of Civ. No. 87–0732, moves this court for summary judgment in this action regarding the validity and enforceability of a development agreement against Hawaii Waterfront Limited Partnership ("HWLP") and Cordish Embry & Associates ("Cordish Embry") collectively referred to hereafter as HWLP. Defendants Kent M. Keith ("Keith") and Roger A. Ulveling ("Ulveling") filed a statement of no opposition to this summary judgment motion.

### II.

ATDC was created by the Hawaii legislature in 1981 "for the purpose of undertaking the redevelopment of the Aloha Tower Complex to strengthen the international economic base of the community in trade activities, to enhance beautification of the waterfront, and in conjunction with the State Department of Transportation ('DOT') to better serve modern maritime uses, and to provide public access and use of the waterfront property." HRS Section 206J–1. ATDC initially negotiated unsuccessfully for the development of the Aloha Tower Complex with a development consortium including Southern Pacific Railway before contacting the development firm of Cordish Embry & Associates. Thereafter, Cordish Embry, in conjunction with others, organized HWLP which, in addition to Cordish Embry & Associates, consisted of Island Navigation Corporation (Realty), Ltd. and American Hawaii Cruises.

In 1985, the parties began to negotiate for the development of the Aloha Tower site and they entered an "Interim Development Agreement" (IDA) on April 16, 1985, which provided for exclusive negotiations between HWLP and ATDC for a development agreement and a lease of the waterfront property. HWLP agreed to pay ATDC $100,000.00 for the exclusive negotiation rights. It appears that HWLP paid only part of the $100,000.00 to ATDC.

The IDA provided that the parties were to enter into good faith negotiations to execute a development agreement and a land lease before April 25, 1986. The IDA also contained a list of 15 "major points of negotiation" which were contemplated to be included in the parties' negotiations. The exclusive negotiating agreement was extended by "Supplemental Agreement No. 1" until July 25, 1986.

On July 7, 1986, the parties executed a four page letter agreement entitled "Development Agreement by and between Honolulu Waterfront Limited Partnership and Aloha Tower Development Corporation." The letter agreement states in pertinent part,

> This letter will verify certain understandings reached between the parties and serve as a binding agreement between us concerning the Project. Preparation and execution of final documents shall proceed with due diligence and in good faith, and both parties agree to execute such other further documents as are necessary to effectuate this agreement.

HWLP's complaint asserts that the letter development agreement is the development agreement contemplated by the IDA. ATDC characterizes the letter development agreement as an agreement to agree or as an agreement to negotiate in good faith.

Although the letter development agreement discussed the general scope of the project under which HWLP would build a first-class hotel, office buildings, a retail complex, and maritime facilities; there were numerous essential terms still to be negotiated, including a master lease with DOT, minimum and percentage rental, what new maritime facilities would be constructed and who would pay for them, plans and specifications for a first-class hotel, office buildings, a retail complex, maritime facilities, parking facilities, and other public improvements, subordination provisions for HWLP's lenders, and creation of a tax increment district with the city (to which the Mayor had already indicated his opposition).

As an example, the lease provision states,

> LEASE TERMS. The term of the lease ... shall be 64¾ years, and the term of the Master Lease shall be 65 years. The Partnership [HWLP] shall pay as yearly rent (a) a *minimum amount which shall not be more than* $821,000.00 plus an amount to pay the debt service on the bonds, *or* (b) *a percentage rent as agreed* upon by the parties, whichever is greater. The parties hereto understand that the total rent will be based on, inter alia, the amount of the bond issue, the Partnership's phasing schedule and further negotiation. (emphasis added).

In addition, almost every other provision contemplates further negotiation or requires approval of final plans and specifications by ATDC.

After the letter development agreement was signed, negotiations appear to have degenerated. HWLP seems to have pressed for continued negotiations while ATDC apparently refused to acknowledge that it had entered any agreement with HWLP. ATDC's position is evidenced by, amongst other things, two letters from ATDC to HWLP dated October 14, 1986 and November 13, 1986. In the November 13, 1986 letter, ATDC states in part,

> [T]he letter agreement of July 7, 1986 was entered into as an accommodation to you to provide your potential lenders

with a document setting out the then current status of the negotiations between the parties.... Even a cursory review of the letter agreement reveals that many major points have yet to be agreed upon, thereby making it obvious that the requisite "meeting of the minds" has not been achieved.... We believe there is no way that the Interim Development Agreement, as supplemented by the letter agreement, can be interpreted as "firm contractual commitments." ... Since the term of the Interim Development Agreement, as extended, has expired, it must once again be extended before further negotiations can take place....

HWLP alleges that it continued working on the Aloha Tower Complex at the urging of ATDC, Keith, and Ulveling up until fall of 1987. Further, HWLP alleges that it has expended over 2 million dollars in time and actual expenses in good faith performance under the letter development agreement. ATDC asserts that it repeatedly manifested its belief that no development agreement existed and that HWLP did not have exclusive negotiating rights after the expiration of the Interim Development Agreement.

A declaratory judgment action was filed by ATDC in state court on September 22, 1987, which was subsequently removed to this court on October 1, 1987, seeking a determination that no development agreement existed between HWLP and ATDC, that the IDA had expired, that the July 7, 1986 Development Agreement was not the "development agreement" contemplated by the IDA, and that ATDC had no continuing obligation to negotiate with HWLP. HWLP filed a countersuit in federal court on September 28, 1987 (the suits are now consolidated) asserting claims including breach of contract and a request for specific performance of the agreement.

HWLP filed its second amended complaint on December 10, 1987. The instant motion for summary judgment was filed by ATDC on December 21, 1987 seeking dismissal of HWLP's second amended com-

plaint, relief as requested in ATDC"'s complaint, and attorneys' fees and costs.

### III.

The court's scrutiny of this motion for summary judgment is to determine whether any material fact has been put into issue by the nonmoving party and if not, whether summary judgment should be granted as a matter of law. The Ninth Circuit has recently summarized the standard for summary judgment as follows:

> if the nonmoving party will bear the burden of proof at trial as to an element essential to make its case, and that party fails to make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element, then summary judgment is appropriate. Second, to withstand a motion for summary judgment, the nonmoving party must show that there are 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.' Finally, if the factual context makes the nonmoving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial.

*California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466 (9th Cir.1987) (citations omitted).

Broadly stated, HWLP asserts that the letter development agreement alone, or in conjunction with the IDA, and Supplemental Agreement # 1, constituted a valid and binding contract which ATDC has breached. ATDC asserts that the letter development agreement, even in conjunction with the IDA and Supplemental Agreement # 1, were merely steps in a series of negotiations and that the letter development agreement was an unenforceable agreement to agree. At hearing, ATDC conceded that for the purposes of this summary judgment motion that ATDC intended the letter agreement to be a binding development agreement, but argues that it nevertheless is unenforceable because it lacks essential terms.

ATDC asserts that all counts except for count IV (promissory estoppel) are based upon a finding that an enforceable contract exists. Absent an enforceable contract, ATDC asserts that none of the requested relief under counts I (breach of contract), II (declaratory judgment), III (specific performance), V (civil rights violation) or VI (injunction against dissolution of ATDC) can be granted and summary judgment is appropriate.

### IV.

The letter development agreement appears to be a valid contract evidencing a meeting of the minds. The document is entitled "development agreement." It states that it is binding between HWLP and ATDC. The interim development agreement refers to HWLP as the "prospective" developer, whereas the development agreement refers to HWLP as "the developer."

However, the agreement also leaves numerous terms and conditions for further negotiation, including a master lease with the State Department of Transportation, minimum and percentage rental, the scope of maritime facilities to be built and who will pay for them, plans and specifications for a first-class hotel, office buildings, a retail complex, parking facilities, and other public improvements, subordination provisions for HWLP's lenders, and creation of a tax increment district with the city. The rental arrangement specifically provides that the total rent will be based on, inter alia, the amount of the bond issue, HWLP's phasing schedule and further negotiation. In addition, the building program provides that ATDC and HWLP will negotiate a time schedule for the construction of the project in good faith. No time is expressed for the life of the development agreement.

ATDC argues that under Hawaii law an agreement to agree which does not specifically address each material term is unenforceable notwithstanding the intent of the parties. *Clarkin v. Reimann,* 2 Haw.App. 618, 638 P.2d 857 (1981); *Lahaina–Maui*

*Corp. v. Tau Tet Hew,* 362 F.2d 419 (9th Cir.1966); *In re Sing Chong Co., Ltd.,* 1 Haw.App. 236, 617 P.2d 578 (1980); *Francone v. McClay,* 41 Haw. 72 (1955). ATDC argues that under *Clarkin,* the necessary material terms, especially the lease minimum and percentage rent, are not sufficiently specific.

HWLP asserts that the material elements are present in the letter development agreement relative to the type of development agreement that it is, i.e., a very large public/private development project. HWLP attaches affidavits that indicate that other large public/private projects have proceeded with similar or even less specific agreements between the parties. These affidavits misconstrue the development agreement as establishing a minimum rent, and also fail to explain how the development agreement could be an enforceable contract given the lack of essential terms.

In his Affidavit in Opposition to Motion for Summary Judgment, David S. Cordish of HWLP asserted at paragraph no. 8: "Throughout this process and in fact to-date, we considered and still consider the Development Agreement dated July 7, 1986 to obligate and bind us to do this project, along the lines outlined therein...." And, in paragraph no. 11, Mr. Cordish stated: "The Development Agreement was drafted over a period of several months ... and was intended to be a firm and binding agreement between ATDC, HWLP and CE & A. That is why it was titled 'Development Agreement'. It was the expected follow-up document to Kent Keith's letter dated April 11, 1986, wherein Keith spoke of just such a Development Agreement...." The April 11, 1986, letter provides, inter alia: "We recommend that ATDC then enter into two agreements with Cordish Embry: (1) a Development Agreement, which will supersede the Interim Development Agreement, and will be the overall document regarding the rights and duties of all parties; and (2) a lease from ATDC to Cordish Embry. An alternative would be to enter into a single agreement between ATDC and Cordish Embry, which includes all the provisions of the Development Agreement and land lease...."

As noted above, ATDC has conceded that for the purposes of this summary judgment motion, the letter development agreement is a binding development agreement. On the other hand, HWLP in its complaint and the affidavit of Mr. Cordish assert that the letter development agreement is the development agreement contemplated by the parties in the IDA. In a memorandum in opposition to the motion for summary judgment, HWLP also argues that the letter development agreement is really an agreement for the retention of HWLP as the developer and was not intended as the final blueprint of the development of the Aloha Tower complex. However, in that case the agreement would be unenforceable because it lacks essential provisions such as compensation to the developer, the specific scope of the project, and the term or duration of engagement, among others. Should the letter development agreement be characterized as an extension of the IDA, it would still be unenforceable as an agreement to negotiate or an agreement to agree, and it would have failed in its very purpose of establishing an extended term.

This court finds for purposes of this summary judgment motion, that the letter development agreement is the development agreement contemplated by the parties in the IDA and that it supersedes the IDA. However, for future proceedings, questions of fact remain regarding the parties' intent as to whether the letter development agreement was the development agreement contemplated by the IDA. Alternatively, the parties may have intended the letter development agreement to be an agreement to agree, or an agreement to extend the IDA, or an agreement to engage HWLP as the developer of the Aloha Tower Complex, or a finance letter. However, based upon the finding above that the letter development agreement is the development agreement, the court finds that the development agreement fails for indefiniteness as a matter of law. This finding of lack of essential terms would apply to each of the possible alternatives mentioned above, with the result that each of these similarly would be unenforceable. Based upon the Hawaii

cases of *Clarkin, Lahaina–Maui Corp., Sing Chong,* and *Francone, supra,* the material elements necessary for a contract are not present, especially with regard to the lease rent term which specifically provides that the total rent will be based upon further negotiation of the parties and requires agreement on both the minimum and percentage rent. Upon this basis alone, the contract, even though the parties intended it to be binding, is unenforceable under *Clarkin,* which held that an agreement to lease which called for future renegotiation of the rent, with no method of determining future rent other than setting forth a minimum rent, was unenforceable. *Clarkin,* 2 Haw.App. at 627–628. Likewise, in *Lahaina–Maui Corp.,* Judge Pence found that the subordination provision was vital to the agreement, with the Ninth Circuit in its affirmance noting that the subordination clause, on its face, implied that further negotiations were contemplated. 362 F.2d at 422. See also *Waltentas v. Lipper,* 636 F.Supp. 331 (S.D.N.Y. 1986) where a large scale public/private urban renewal contract was held to be terminable by the municipality.

The Hawaii Court of Appeals enunciated the following rules to be applied where a contract has been challenged for uncertainty. *In re Sing Chong Co., Ltd., supra,* at 239, 240, 617 P.2d 578,

As a matter of policy, the law leans against the destruction of contracts for uncertainty. Courts favor the determination that an agreement is sufficiently definite. We will, if possible, so construe the agreement as to carry into effect the intention of the parties. 17 Am.Jur.2d, Contracts § 75.

We read *Francone v. McClay,* 41 Haw. 72 (1955) as authority for the following statements of law:

1. An agreement of sale of land which contains complete and certain essential terms is a valid and enforceable contract if the facts indicate that the parties at the time it was entered into had no expectation of further provisions to be negotiated later. Essential terms are the identification of the parties, a description of the property sold, the price, the time and manner of payment and any other terms in the agreement which are essential to the agreement.

2. In the situation where the agreement does not specify or fully express an essential term but does specify the method of ascertaining it, that term shall be deemed to be complete and certain.

3. In the situation where the agreement does not specify or fully express all of the non-essential terms, the usual terms will be implied in law.

In the instant case, the letter development agreement not only fails to express numerous essential terms, but further fails to specify the method of ascertaining them. Since these are not "non-essential terms", the usual terms may not be implied in law.

Generally, the overwhelming weight of authority holds that courts will not enforce an agreement to negotiate. *First National Bank v. Burton, Parsons and Co.,* 57 Md.App. 437, 470 A.2d 822 (1984); *Metro Media Broadcasting Corp. v. MGM/UA Entertainment Co., Inc.,* 611 F.Supp. 415 (C.D.Cal.1985); *Ridgeway Coal Co., Inc. v. FMC Corp.,* 616 F.Supp. 404 (S.D.W.Va. 1985); *Griffin v. Griffin,* 699 P.2d 407 (Colo.1985); *Cinman v. Reliance Federal Savings & Loan Association,* 155 Ill.App. 3d 417, 108 Ill.Dec. 78, 508 N.E.2d 239 (1987); *Candid Productions, Inc. v. International Skating Union,* 530 F.Supp. 1330 (S.D.N.Y.1982) (while the power of the court to fashion in appropriate cases an equitable remedy is great, it does not encompass a right to make an agreement for the parties.) The latter case, *Candid,* expounds on the difficulty in attempting to specifically enforce the parties to negotiate. *Griffin* explains that it makes little sense to order parties to enter negotiation when the court has no power to order them to agree. Given this powerlessness, it would be futile for the court in the present case to order the parties to meet and negotiate.

It appears to this court that an order of specific performance of the obligation of the parties to negotiate in good faith, pursuant to the letter development agreement, would be fruitless and impracticable at this time, since it would be impossible for the

court to monitor or determine who was or was not negotiating in good faith.

■ A decision more in line with HWLP's position is *Van v. Fox*, 278 Or. 439, 564 P.2d 695, 701 (1977), where the court pronounced "it is not unusual for parties involved in complicated business transactions to allow subsidiary details to remain unspecified until such time as the need for agreement actually arises." The *Van* court stated that the law does not favor, but leans against, the destruction of contracts because of uncertainty; and it will, if feasible, so construe agreements as to carry into effect the parties' reasonable intentions as much as they can be ascertained. *Id.* 564 P.2d at 699. The court stated the resulting standard becomes one of substantial fairness to both parties. *Id.* Neither party to a contract should be required to perform additional, material terms to which he did not either explicitly or implicitly agree. *Id.* On the other hand, however, neither party should be allowed to void his contractual duties merely because the language which was utilized to express the agreement was less specific and complete than that which a careful lawyer would ordinarily employ. *Id.* The court also noted that it should be kept in mind that the contract should be construed more strongly against the drafter. *Id.* 564 P.2d at 670. In the instant case, while the document ATDC now claims to be too indefinite to be enforceable was drafted by ATDC; the document was thoroughly reviewed by counsel for HWLP, and several revisions were made as a result of its input. Therefore, both parties equally bear the onus of any ambiguity. *International Wood Processors v. Power Dry, Inc.*, 593 F.Supp. 710 (D.S.C.1984), *aff'd* 792 F.2d 416 (4th Cir.1986). *See also* Farnsworth, *supra*, § 7.11 at 497–98.

The *Van* decision may be distinguished from the instant case, however, because the *Van* court concluded that the subject letter of intent was sufficiently definite, certain and complete so as to allow the joint venture agreement to be specifically enforceable. Although certain additional terms of the agreement remained to be negotiated upon completion of the first stage of the joint venture (the successful completion of the PUD approval process) the essential features of the agreement had been previously determined. *Id.* 564 P.2d at 700–701. The *Van* court added that the law recognizes a requirement that such further negotiations be conducted in good faith by both parties. *Id.* 564 P.2d at 701.

■ While the letter development agreement is not capable of specific performance because of its indefiniteness, HWLP nevertheless may be entitled to damages. Such damages may arise from a number of possible grounds, including the apparent repudiation of the letter development agreement calling for further negotiations. ATDC may have breached an obligation to negotiate in good faith. The court could impose a reasonable term for such negotiations. *Sing Chong, supra.* ATDC may have repudiated the development agreement by its letter dated October 14, 1986.

HWLP may be entitled to restitution. Affirming Judge Pence's decision in *Lahaina–Maui Corp., supra*, the Ninth Circuit stated "there are instances where a contract which is too indefinite to be specifically enforced can be the basis for an action for damages," citing Restatement of Contracts Section 370(b) (1932). 362 F.2d at 425. The Ninth Circuit agreed with Judge Pence's determination that the "option to lease" did not constitute a legally enforceable contract and therefore, could not be the basis for an action for damages, citing *Kessler v. Sapp*, 169 Cal.App.2d 818, 823, 338 P.2d 34, 37 (1959). *Id.* In *Kessler*, the court stated that a purchaser who is entitled to restitution may, in addition to the sums paid under a void contract, recover the reasonable value of any improvements made, or for services rendered pursuant to agreement, which are of material benefit to the vendor, citing the Restatement of Restitution, Section 53, and other authorities.

The Restatement of Restitution Section 53 provides:

A person who has rendered service to another or service which inures to the other's benefit ... is entitled to restitution therefor if the services were ren-

dered ... to obtain the performance of an agreement made with the other therefor, not operative as a contract, or voidable as a contract and avoided by the other party after the services were rendered, the transferor erroneously believing because of a mistake of law that the agreement bound the other.

The Restatement of Contracts, Section 370, referred to by the Ninth Circuit in *Lahaina–Maui Corp.*, provides that specific enforcement will not be decreed unless the terms of the contract are so expressed that the court can determine with reasonable certainty what is the duty of each party and the conditions under which performance is due. Section 370, Comment (b) also states that if the uncertainty is so great as to prevent the giving of any legal remedy, direct or indirect, there is no contract. "But there may be cases in which it is just to refuse the remedy of specific performance on the ground of uncertainty, even though it is not unjust to give a judgment for damages or restitution."

In addition, damages as a result of detrimental reliance or promissory estoppel may be established as some courts have provided recovery where a contract has otherwise failed for indefiniteness but where one party has relied or performed on the representations of another party. Farnsworth has stated,

> where there is actually no contract the promissory estoppel theory may be invoked, thereby supplying a remedy which will enable the injured party to be compensated for his foreseeable, definite and substantial reliance. The agreement being too indefinite to support recovery based upon the expectation interest, courts have limited recovery to the reliance interest in these cases.

E. Farnsworth, CONTRACTS, § 3.30 at 210 (quotation omitted).

On the other hand, it may be that HWLP assumed the risk that the letter development agreement, as well as the interim development agreement, were unenforceable. These are all questions of fact which defeat ATDC's motion for summary judgment on certain of HWLP's counts in its second amended complaint.

The first count of HWLP's second amended complaint is for breach of the development agreement. It appears at a minimum that there may have been a breach by ATDC's failure to negotiate in good faith or by its October repudiation of the letter development agreement. In any event, HWLP may or may not be entitled to damages. Summary judgment is therefore denied as to Count I.

Count II of HWLP's second amended complaint is for a declaratory judgment. HWLP asks this court to issue an order declaring that a valid and binding contract exists and existed at all relevant times and that the parties must abide by such contract. Since the contract is unenforceable, summary judgment is granted.

Count III of HWLP's second amended complaint is for specific performance of the development agreement. Since the contract is unenforceable, summary judgment for count III is granted.

Count IV is for damages based upon a theory of promissory estoppel against ATDC, Keith and Ulveling because of inducement and detrimental reliance. Judge Holland ruled in previous orders dated February 8 and February 12, 1988 that the second amended complaint would be dismissed as to defendants Keith and Ulveling respectively.

Count IV includes claims against ATDC, which ATDC alleges are improper under another previous order by Judge Holland dated December 15, 1987 which allowed only specific amendments in the second amended complaint. However, ATDC does not allege that any prejudice would result if the amendments were to stand. While Judge Holland's ruling restricted amendments, under the more fully developed record on this motion for summary judgment, the court finds that it would be a manifest injustice to HWLP not to allow it to amend its complaint as against ATDC. *Senza–Gel Corp. v. Seiffhart*, 803 F.2d 661, 667 (Fed.Cir.1986). The Federal Circuit in applying law of the Ninth Circuit stated that amendments to a

complaint are procedural matters and should be liberally granted. Amendments should be granted unless the other party would suffer prejudice. *William Inglis v. ITT Continental Baking Co.*, 668 F.2d 1014 (1981) (amendments made one year after commencement of trial not prejudicial because parties were on notice that claims of that nature were involved and there was no reason to believe that opposing party was "unprepared to litigate" the added claim). Orders issued by the trial court are interlocutory and are subject to revision before final judgment at the court's discretion. *See* MOORE'S FEDERAL PRACTICE, ¶.404[1]. In this case, Judge Holland's previous ruling does not constitute law of the case because a ruling on whether to allow an amendment is a procedural matter which courts have liberally construed and does not constitute a rule of law. *Senza–Gel*, 803 F.2d at 667. *See also Zenith Radio Corp. v. Matsushita Elec. Indus. Co. Ltd.*, 505 F.Supp. 1125, 1185 n. 71 (E.D.Penn.1980), *aff'd in part, rev'd in part sub nom. In re Japanese Electronic Products Antitrust Litigation*, 723 F.2d 238 (3d Cir.1983) (authorities are clear that it is legal issues which cannot be readdressed as law of the case; preliminary factual findings made for one purpose are plainly not the law of the case for other legal issues). Before final judgment, the doctrine of law of the case is not a limit on the court's power to revise even its rulings on issues of law if the previous ruling would cause manifest injustice and is clearly erroneous. *See* MOORE's FEDERAL PRACTICE, *supra.*

In the instant case, HWLP's amendments in its second amended complaint, which include claims of promissory estoppel against ATDC, will be allowed to stand. Therefore, whether a promise was made by ATDC which induced detrimental reliance is a question of fact which will defeat summary judgment on count IV.

■ In Count V, HWLP asserts deprivation of its civil rights by impairment of contract in violation of Article I, Section 10 of the U.S. Constitution and 42 U.S.C. Section 1983. HWLP asserts that past and expected future actions of defendants have deprived HWLP of their civil rights to be free from impairment of contracts by officials acting under color of state law. ATDC does not specifically dispute this claim except by stating in passing that all counts except the promissory estoppel count are premised upon a finding by the court that a binding contract exists. This count was not sufficiently addressed in the summary judgment motion, and HWLP may be entitled to some damages as a result of the repudiation of the development agreement. Accordingly, summary judgment on Count V is denied.

Count VI is for a permanent injunction. HWLP asks this court for a permanent injunction against ATDC's present and future attempts to dissolve or terminate ATDC in violation of Article I. Again, ATDC does not contest this theory except in passing by stating that valid contract must be found to exist. This count was insufficiently addressed in the motion and therefore, summary judgment is denied for Count VI.

■ In addition to seeking summary judgment dismissing HWLP's second amended complaint, ATDC seeks the relief it prayed for in its complaint. In its complaint, ATDC seeks a declaratory judgment determining that (a) the Interim Development Agreement, as amended by Supplemental Agreement No. 1, has expired (b) the Letter Agreement is not the development agreement or lease agreement contemplated by the Interim Development Agreement, as amended by Supplemental Agreement No. 1, and (c) plaintiff has no continuing obligation to negotiate with defendants with respect to the Aloha Tower complex and that defendants have no rights to develop the Aloha Tower complex. Further, ATDC prayed for attorneys' fees and costs.

With respect to (a) and (b), above, ATDC conceded for purposes of its motion that the letter development agreement was the development agreement contemplated by the interim development agreement, as amended by Supplemental Agreement No. 1. As to (c), the court will not order the

parties to continue negotiating, and because the signed letter development agreement is not specifically enforceable, the court finds that HWLP has no rights to develop the Aloha Tower complex. ATDC's request for fees and costs will be denied pending the final outcome of this action.

An additional matter arose after hearing of the summary judgment motion which dealt with the withdrawal of Mr. Robert Embry from Cordish Embry. ATDC asserted that Mr. Embry's withdrawal would preclude specific performance of the letter development agreement. It would be a question of fact whether Mr. Embry's withdrawal from Cordish Embry would impact the performance of the contract and whether ATDC intended to deal exclusively with Mr. Embry because of his expertise. However, since summary judgment is granted as to the specific performance count, the remaining question regarding Mr. Embry's future performance is rendered moot.

## V.

Accordingly, the court, having reviewed the motions, memoranda in support and in opposition thereto, the record herein, and having heard oral arguments by counsel, hereby ORDERS that summary judgment is granted as to Count II pertaining to declaratory judgment and Count III pertaining to specific performance in HWLP's second amended complaint. As to all other counts contained in HWLP's second amended complaint, summary judgment is denied. With regard to ATDC's complaint, the court will decline to issue summary judgment as to (a) and (b) of ATDC's complaint, but will issue a partial summary judgment as to (c), that because the letter development agreement is not specifically enforceable, HWLP and ATDC are not bound to continue negotiations and HWLP has no future right to develop the Aloha Tower complex.